## 41397. FARMER v. THE STATE.

SUBMITTED SEPTEMBER 9, 1965—DECIDED SEPTEMBER 21, 1965— REHEARING DENIED OCTOBER 11, 1965.

*Guy B. Scott, Jr.,* for plaintiff in error.

*Preston M. Almand, Solicitor,* contra.

EBERHARDT, Judge. 1. (a) In urging the general grounds defendant asserts that there was failure of the proof to meet the allegation in the indictment that the place of the gathering was the "V.F.W. Club No. 2872," since the true name of the organization owning the property was the Veterans of Foreign Wars, Post No. 2872. "Identitate personae, and not indentitate nominis, is and should always have been the true and only issue." *Chapman v. State,* 18 Ga. 736, 738; *Gresham v. State,* 216 Ga. 106 (5), 109 (115 SE2d 191); *Chapman v. State,* 33 Ga. App. 570, 571 (126 SE 895); *Wilson v. State,* 67 Ga. App. 404, 405 (20 SE2d 433). See 86 ALR2d 757n. This contention is without merit.

(b) Another contention is that the proof showed the occurrence happened on the grounds leased to Little League, Inc., while it was alleged in the indictment that it took place on the V.F.W. Club No. 2872 grounds. There was some conflict as to just where the occurrence took place, in that Teddy Brown testified it happened on the Little League field and Officer Taylor testified "the first time I saw Mr. Farmer he was standing just outside the parking lot in the baseball field, just over the line where they have stobs to keep cars from going where they play ball, with a gun in his hand," but also testified that he saw him on the grounds of the V.F.W. Club about 75 feet from the club house, and on cross examination testified: "Q. Lt. Taylor, did you say that he was standing on the Athens Little League Baseball Field? A. No, sir, not the Little League, it was not out that far. It was back up from the Little League. Q. Across those stakes where they play ball? A. They don't play ball there but it goes on out to the ball field. Q. It is the side of the left field isn't it? A. You come out of the VFW door, it would be just in front of the VFW Club. Q. You know where

the fence is out there? A. Yes, sir. Q. That encloses the playing field? A. Yes, sir. Q. Was it left of that field? A. It would be on the left field side." It was uncontradicted that the V.F.W. Club owned all of the grounds, including the baseball field leased to Little League. If this was material in the proof the jury resolved the matter against the defendant and was authorized to do so.

(c) The case of *Modesette v. State*, 115 Ga. 582 (41 SE 992) does not require a reversal. There it was held that one who goes to a public gathering with no pistol upon him at the time he arrives but afterward becomes possessed of one, whether innocently or designedly, is not guilty of an offense under Penal Code § 342 (now *Code* § 26-5102). Rather, the facts here are controlled by *Wynne v. State*, 123 Ga. 566 (3) (51 SE 636), holding that if a person carries a deadly weapon to a place near a public gathering so that it will be accessible, and while the gathering is in progress goes to the place of deposit and obtains actual possession of the weapon and carries it to the gathering he is guilty of the offense.

This statute (*Code* § 26-5102) is very similar to *Code* § 58-603 by which it is made unlawful to carry any liquor or intoxicating drink to a church or other place where people may assemble for divine worship. In *Bice v. State*, 109 Ga. 117 (34 SE 202) it appeared that the defendant carried a bottle of whiskey to a church, where people were assembled for worship, in his buggy and the buggy was left standing from 100 to 200 yards from the church. His conviction was affirmed, and in doing so the court observed that "a fair and even strict construction requires us to hold that, when it forbids carrying intoxicating liquor to a church, it means also to forbid its introduction to a place in such immediate proximity to the church building as to make it readily accessible to those who may desire to use it."

If there be any difference in the *carrying* of a bottle of liquor in a buggy to a church gathering and the *carrying* of a sawed-off shotgun in an automobile to a V.F.W. dance, we are unable to discern it. This is particularly true when it appears that the defendant, after arriving at the V. F. W. Club grounds,

went to his car and got the gun from under the seat, thus having it "about his person" at the gathering.

2. Error is assigned upon a portion of the charge in which the court informed the jury that while it is an essential element of the offense that it be shown that the defendant did carry the weapon to a public gathering, in doing so the "possession may be actual or constructive." We find no error in this charge. That the sawed-off shotgun was under the seat of his automobile rather than in his hands in the carrying of it from Monroe to Athens can make no difference. The gun was nevertheless in his possession. It was his gun, his automobile and he was driving it. It cannot be doubted that he knew the gun was in the car, for it is undisputed that when trouble appeared to be arising he went to the car and got the gun from under the seat.

3. Error is assigned upon the giving of an illustration of constructive possession in defining that term to the jury when the judge asserted: "I might illustrate it by saying my old automobile setting out here is in my constructive possession, but this pipe is in my actual possession. I happen to own both. Does that illustration adequately assist you?" This illustration is in conformity with the law appertaining to chattels. "As applied to personalty the term [constructive possession] may be used to designate the relationship between the owner of property and the property when the owner is not in actual possession thereof, and the general rule seems to be that if the owner knows where the property is, so that he would be able to recover the actual possession when he desired, then he is in constructive possession. . ." 73 CJS 203, Property, § 14 (c). Cf. *Henley v. State*, 59 Ga. App. 595 (2) (2 SE2d 139). It is true that the defendant would be guilty under this statute if he carried the gun to a public gathering, whether he owned it or not, and that ownership was not an essential ingredient of the offense. But it did appear from the evidence that the defendant owned the gun. Moreover, the definition of constructive possession and the illustration would still hold even if the defendant's rights in the gun were no more than a special property accruing from a bailment of the gun, or even from a possession wrongfully obtained.

*Judgment affirmed. Nichols, P. J., and Pannell, J., concur.*