## 66007. JORDAN v. THE STATE.

DEEN, Presiding Judge.

Audie Jordan was convicted of carrying a concealed weapon, carrying a deadly weapon to a public gathering and carrying a pistol without a license. Following these convictions, the court revoked the balance of a twelve-month probated sentence which had begun to run some four months earlier, and sentenced him to serve an additional twelve months on each of his three convictions.

The charges arose from an incident which occurred on July 9, 1982, at about 11:25 p.m., outside the Loganville Auto Auction when someone reported to the security guard, who was also a deputy sheriff, that a woman was "in the road shooting at people running across the field." The guard radioed the Sheriff's Department for help and observed the woman shooting at a man who appeared to fall as he ran. When the deputy reached the woman, appellant had wrestled her to the ground. The deputy told them to remain where they were while he went to try to locate the man who had been running. When he returned, the couple had crossed the road and were standing beside appellant's pickup truck in the auction's parking lot.

The deputy noticed that the woman was very intoxicated and unruly. Appellant asked if he could leave with her "to take care of her." The deputy refused, as he wished to investigate the shooting incident. On questioning, the woman claimed that she had thrown the gun into some bushes when she was across the road. The deputy asked appellant if he had the gun, but received no reply. The deputy disbelieved him and asked him to submit to a search. In response, appellant reached into his right rear pocket, and the deputy told him

to remove his hand from his pocket. A loaded .22 caliber derringer was discovered during a pat-down search. The deputy further testified that the gun had not recently been fired.

The woman, one Susan Frye, testified that she had two guns in her possession that evening: a .38 pistol and the derringer, which she claims she found in appellant's brother's truck when she was helping prepare it for the auction, and placed it in her purse. Her testimony was impeached by evidence that a month earlier she had told the deputy that she had never seen the derringer before and did not mention finding it in the pickup truck. Appellant claimed that he had once owned a similar gun but had given it to his former wife and did not know where it was now. Rebuttal testimony showed that nearly one year previously the gun, identified by its serial number, had been found under a mattress in appellant's home and seized by the police. It was later returned to appellant's wife. The deputy also testified he had checked the fingerprint file after appellant's arrest to determine if the accused had ever applied for a pistol permit. There was no application in the file.

1. Appellant contends the court erred in allowing a statement he made to the deputy before he was given his Miranda warnings to be introduced into evidence against him. The deputy testified that after he completed the pat-down search and discovered the concealed weapon, he asked appellant if the gun belonged to him, and he replied that it did. The deputy next asked if he had a license to carry it, and he replied that he did not. There was also a statement introduced into evidence which the deputy dictated some time after apellant's arrest. The relevant part of the statement reads: "Mr. Audie Jordan was also saying that everything was alright that he was going to take her on home that she was with him. I advised both of them that they were under arrest for discharging a firearm. I asked Mr. Jordan to put his hands up on the truck and let me pat him down and he refused. He ran his hand into his right back pocket. When he did I grabbed his hand and pulled it out. I reached in his right back pocket and he had a small .22 caliber pistol Darrenger [sic.] type made by North American Arms Corp., Serial #B55931. I took this gun from Mr. Jordan and I asked him did he have a permit to carry it and he advised me that he didn't. I told him that he was under arrest for carrying a concealed weapon without a license." During the trial, the officer was questioned as to the two arrests mentioned in the statement. He explained to the court that Jordan was arrested only once and that the first mention of his arrest was a typographical error. The court appears to have found that it was and to have denied the Miranda objection to the testimony.

Miranda warnings were not required in the present case. Under

OCGA § 16-11-126 (c) (Code Ann. § 26-2901), a person is not permitted to carry a concealed firearm "... unless he has on his person a valid license issued under Code Section 16-11-129 [Code Ann. § 26-2904] . . ." and the weapon is carried in the manner specified. Under OCGA § 16-11-128 (Code Ann. § 26-2903), a person commits the offense of carrying a pistol without a license ". . . when he has or carries on or about his person, outside of his home, motor vehicle, or place of business, any pistol or revolver without having on his person a valid license issued by the probate court of the county in which he resides . . ."

Carrying a pistol without a license and carrying a concealed weapon are separate offenses even though they grow out of the same offense. *Asberry v. State,* 142 Ga. App. 51 (234 SE2d 847) (1977). A prima facie case is established by proof that the defendant carried a pistol in a public place and he bears the burden of proving he has a valid license. *Days v. State,* 134 Ga. App. 585 (215 SE2d 520) (1975).

2. Appellant further contends that the statement dictated by the deputy was not furnished to him as required under OCGA § 17-7-210 (Code Ann. § 27-1302) despite a timely written request for all statements. The prosecutor stated in his place that the statement was newly discovered evidence of which he had no prior knowledge and was not a part of his file. He further argued that the statement was noncustodial and not subject to discovery under this code section. In view of our holding in Division 1, we need not reach the claim of newly discovered evidence because the oral statement was given to the officer when the officer had probable cause to conduct a pat-down weapon search and the burden of proving that he had a valid license for carrying the pistol was upon the appellant. He was arrested only after he admitted he did not have a license.

3. The evidence amply supported the jury's verdict on the remaining two charges, and a rational trier of fact could find beyond a reasonable doubt that appellant had committed the crimes with which he was charged. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Crawford v. State,* 245 Ga. 89 (263 SE2d 131) (1980).

4. OCGA § 16-11-127 (Code Ann. § 26-2902), carrying deadly weapons to or at public gatherings, is not unconstitutionally vague as contended by appellant. *Byrdsong v. State,* 245 Ga. 336 (265 SE2d 15) (1980). See also *Farmer v. State,* 112 Ga. App. 438 (145 SE2d 594) (1965) wherein appellant's conviction was affirmed. He carried a shotgun in his car and parked on the V. F. W. Club grounds. A fight began in the parking lot and appellant returned to his car, got the shotgun, loaded it and stood the attackers off. The evidence here shows that Jordan possessed a loaded weapon on the auction grounds

and that many people were present in the parking lot when it was removed from his person.

5. Testimony by the arresting officer as to statements made by Ms. Frye was not hearsay evidence but they were made in the presence of appellant. *Grindle v. State,* 151 Ga. App. 164 (259 SE2d 166) (1979); *Moore v. State,* 240 Ga. 210 (240 SE2d 68) (1977).

6. The court did not err in failing to grant a mistrial after the District Attorney told Ms. Frye to report to the bailiff following her testimony. The trial court did not hear the allegedly improper remark, and it was not recorded. Upon objection, the court suggested that counsel might wish to poll the jury to determine if they had heard it. Counsel declined and did not request curative instructions or renew his motion. Where counsel makes improper remarks, the court has a duty to rebuke him so as to remove the improper impression or give adequate instructions to the jury so as to remove the prejudicial effect of the remark. *Vernon v. State,* 152 Ga. App. 616 (263 SE2d 503) (1979). Moreover, the remark must have been heard by the jury and go to matters not in evidence. OCGA § 17-8-75 (Code Ann. § 81-1009). Ms. Frye's perjury did come into evidence on both direct and cross-examination and there is nothing in the record to indicate that the jury heard the remark. As the court did not hear it and did not believe that the jury had done so, the court did not abuse its discretion in denying the motion for mistrial. *Johnson v. State,* 142 Ga. App. 526 (236 SE2d 493) (1977).

7. The disqualification of the trial judge in a subsequent prosecution of the appellant does not in and of itself require his disqualification in the present case. There is nothing in this case to indicate in what way it was related to pending RICO charges or that the issue was even raised in the court below. Thus, there is nothing for this court to consider on appeal. *Johnson v. State,* 160 Ga. App. 590 (287 SE2d 629) (1981); *Lester v. Groves,* 162 Ga. App. 590 (291 SE2d 785) (1982).

*Judgment affirmed. Banke and Carley, JJ., concur.*

DECIDED APRIL 27, 1983.

*Jere Field,* for appellant.

*John T. Strauss, District Attorney, Steven A. Hathorn, Assistant District Attorney,* for appellee.