70602. GRAHAM v. THE STATE.
70603. LaCOUNT v. THE STATE.
(333 SE2d 664)

BIRDSONG, Presiding Judge.

Isaac Graham and Victor LaCount, both inmates in the state prison at Reidsville, appeal their convictions of aggravated assault upon Leroy Holmes, another inmate.

On the evening of August 29, 1984, in the L-2 dormitory of the Reidsville prison, a fight occurred within the cellblock. A correctional officer saw the fight and alerted other guards. At the end of each cellblock is a small cell-like area called the "sallyport." Correctional officers rushed into the sallyport and saw Graham and LaCount with homemade knives, called "shanks," being used to stab Holmes. These homemade knives are also called "stickers" because they are better suited, or adapted to stick, or puncture, than slash. Holmes received 23 puncture type wounds before he escaped into the sallyport with the officers. Two officers saw Graham and LaCount with the knives and saw them using them to stab Holmes. Holmes refused to testify against either defendant out of fear of retaliation from other inmates. LaCount admitted that he stabbed Holmes but claimed self-defense. He said he saw Holmes reach for his knife. Graham denied using a knife and said he was only trying to break up the fight between Holmes and LaCount. The jury resolved these conflicts in the evidence against the defendants and they appeal their convictions. *Held*:

*Appeal No. 70602*

1. Both defendants objected to the court permitting Holmes to testify after he said he was *not* willing "to testify as to what happened

in regard to the stabbing." The jury was excused and Holmes stated: "I feel that my life be [sic] in danger, not by the defendants, but most [sic] by the majority of the inmates there . . . anybody testifies against another inmate [sic] what they'll do to them . . . I just don't feel, you know, safe about testifying against them." After the jury returned, the prosecutor asked Holmes why he was refusing to testify. He stated: "my life would be in danger by the other inmates if I testify against another inmate." After being warned of the consequences and refusing to answer a question, the court held Holmes in contempt and immediately sentenced him. Thereafter, he answered all questions of the prosecution and counsel for LaCount. Holmes answered all questions of Graham's counsel except whether Graham stabbed him. Counsel moved for a mistrial on the ground that he was "denied the right to a complete cross-examination." On appeal counsel argues the "clear implication of [Holmes'] testimony was that the defendants had threatened him." We do not agree. We find no reasonable inference of such fact from the record. Holmes made it clear, in the out-of-court examination, that his fear was from the "other inmates" and not from the defendants. Counsel was fully aware of what was said before the jury and outside of the presence of the jury and if he wanted to dispel any adverse implication from the testimony before the jury he knew what the answer of the witness would be. The only "clear implication" that we glean from Holmes' refusal to say whether Graham had stabbed him was that an answer that Graham stabbed him would invoke the danger of retaliation from the other inmates. If his answer would have been that Graham did not stab him, he would have nothing to fear from the other inmates or Graham. Defendant's counsel asked the question and was aware that Holmes might not answer. We find no prejudicial error.

2. Counsel contends the trial court "erred by refusing to declare a mistrial after giving an improper charge on impeachment." At trial, counsel objected on the basis that "after finishing the charge, [the court] went back and again gave the reasons . . . that the testimony would've been impeached . . . this places undue emphasis on the state's position that . . . testimony of the defendants may have been impeached. . . ." The court offered to bring the jury back and to reinstruct them. Counsel declined such proffer on the ground it "would further aggravate the situation. . . ." On appeal, counsel argues that this was "impermissible comment on the evidence by the court. . . ." In the brief, counsel states: "The proper charge had already been given. . . . The court's clarification was essentially a restatement of the state's argument."

The trial court did not give an improper charge on impeachment. A correct charge was given by the court and then he gave two examples to clarify his lengthy charge on impeachment, i.e., by proof of a

contradictory statement and disproving facts testified to by a witness. Credibility of a witness is a proper matter for determination of a jury upon proper instructions from the court. OCGA § 24-9-80. A witness may be impeached by disproving facts testified to by him (OCGA § 24-9-82), and by proof of contradictory statements previously made by him (OCGA § 24-9-83). These examples, given by the court, were adjusted to the evidence. Defendant Graham, who denied that he participated in the fight, admitted he had made a prior statement to the administrative assistant to the warden that: "Yes, I stuck him." See *Ricks v. State*, 70 Ga. App. 395 (3) (28 SE2d 303). Two correctional officers testified they saw Graham with a homemade knife, and he stabbed Holmes with the knife. This is a proper basis for a charge on impeachment by disproving facts testified to by the defendant. *McNeil v. State*, 135 Ga. App. 876 (2) (219 SE2d 613). The charge was authorized by the evidence and did not constitute an impermissible comment on the evidence. A charge defining terms (*Waldrop v. State*, 221 Ga. 319 (7) (144 SE2d 372)), and giving illustrations in clarification of a charge (*Farmer v. State*, 112 Ga. App. 438 (3) (145 SE2d 594)), is not erroneous on the grounds assigned.

### Appeal No. 70603

3. We find no error in the admission of Exhibits 1, 2, 3, and 5 — pictures showing wounds made to the chest, arm, shoulder, and back, respectively, of the victim. The objections voiced include "spectacularly gruesome" and presentation of "different types of medical apparatus." Photographs showing location and extent of wounds to a victim in an emergency room are admissible. *Nassar v. State*, 253 Ga. 35 (2) (315 SE2d 903). Only recently, our Supreme Court established restrictive guidelines for photographs depicting injuries inflicted to a victim by an assailant and by an autopsy. *Brown v. State*, 250 Ga. 862 (5) (302 SE2d 347). Therein, it was held that "[a] photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." Id. p. 867. The injuries shown by the photographs in the instant case showed injuries inflicted by the victim's alleged assailant and were admissible for that purpose. *Lewis v. State*, 253 Ga. 339 (1) (320 SE2d 161). Incidental inclusion of medical apparatus in an emergency treatment room where a victim is being treated because of wounds inflicted by his assailant is not sufficient reason to exclude an otherwise relevant photograph.

4. The jurors returned to the courtroom and requested the court to give "over and above what the book says on self-defense, because [they] had some trouble interpreting that." The defendant claims error in such instruction as leaving an "incorrect impression in the

minds of the jurors. . . ." The court gave examples of authorized self-defense when the assailant used his hands or a weapon. In determining effect of an isolated excerpt of a charge, the charge as a whole must be considered by a reviewing court. *Collier v. State*, 244 Ga. 553, 562 (261 SE2d 364). When viewed as a whole, and not taken out of context, any possible error in this illustration was clearly harmless. *Felts v. State*, 244 Ga. 503 (3) (260 SE2d 887); *Hendrix v. State*, 239 Ga. 507 (3) (238 SE2d 56).

5. Defendant assigns error to the court "not granting a mistrial" because of "the use of an unsworn statement supposedly made by the appellant" LaCount. Following LaCount's version of events that preceded the assault upon Holmes, the prosecution asked LaCount if Holmes "came back and he sat down at the table and started playing cards again. A. I couldn't say that. He came back. . . . Q. Haven't you said that before? . . . I don't know whether I said that or not. . . . Q. Okay. You remember telling Louise Clifton [Administrative Assistant to the Warden] that, I just waited and Holmes sat down again when I went up to him and stabbed him." The court inquired if defendant had been advised of his rights and the prosecutor stated that the statement was introduced "for impeachment purposes and not for any admission of guilt." The court ruled that the statement would be admissible only "if he lays the proper foundation." No further reference was made to the statement. LaCount admitted that he had stabbed Holmes, between 10 and 23 times, after he thought Holmes was reaching for his knife. After the witness was excused, counsel for LaCount moved "for a mistrial, Judge, or in the alternative for a cautionary instruction. . . ." The court commented: "I got the perfect charge in here . . . for that." During the court's charge, the jury was instructed that certain statements had been ruled inadmissible and stricken, and it was not evidence and the jury must not consider them during its deliberations.

We find no prejudicial or reversible error in the procedure followed. First, the state was within legitimate cross-examination of a defendant in questioning him as to whether he had made a prior inconsistent statement. OCGA § 24-9-83. Secondly, a prior incriminatory statement is admissible for impeachment purposes even if *Miranda* warnings had not been given. *Jones v. State*, 243 Ga. 820, 826 (256 SE2d 907). Third, no objection was voiced by defendant at the time the statement was offered. No motion was made to strike or for a mistrial until the close of the witness' statement. This was too late for prompt corrective action. See *Jones v. State*, 160 Ga. App. 140, 141 (3) (286 SE2d 488); *Favors v. State*, 145 Ga. App. 864, 867 (4) (244 SE2d 902); *Barreto v. State*, 123 Ga. App. 117, 118 (179 SE2d 650). Last, the statement referred to was not admitted by defendant but he answered: "I remember saying . . . things of that nature. . . ."

LaCount stated on the witness stand that he had stabbed Holmes many times, and his defense was self-defense. Hence, it is highly probable that the asking of this question did not contribute to the conviction. *Cromer v. State*, 238 Ga. 425, 427 (233 SE2d 158).

*Judgment affirmed. Carley and Sognier, JJ., concur.*

Decided July 10, 1985.

*Jack E. Carney, Jr.*, for appellant (case no. 70602).
*Jon Gary Branan*, for appellant (case no. 70603).
*Dupont K. Cheney, District Attorney, J. Stephen Archer, Assistant District Attorney*, for appellee.