A01A0492. ROCHA v. THE STATE.
(551 SE2d 82)

ELLINGTON, Judge.

Luiza M. Rocha appeals from her conviction of driving without a valid license, OCGA § 40-5-20 (a).[1] For the reasons which follow, we affirm.

At the bench trial on Rocha's traffic citation, the following undisputed evidence was presented: Rocha is a Brazilian citizen who speaks Portuguese. Because she does not speak English, a translator

---

[1] OCGA § 40-5-20 (a) states as follows:

No person, except those expressly exempted in this chapter, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license under this chapter for the type or class of vehicle being driven. Any person who is a resident of this state for 30 days shall obtain a Georgia driver's license before operating a motor vehicle in this state.

was present at trial. Through the translator, Rocha testified that she has been visiting the United States since October 1999. On January 13, 2000, Rocha was driving a vehicle that was involved in an automobile collision on Barrett Parkway in Cobb County. Rocha did not have a driver's license with her at the time of the collision. Therefore, a police officer ticketed her for driving without a license.

At trial, the State argued that Rocha's failure to have a driver's license in her possession at the time of the collision was sufficient to establish a presumption that she was driving without a license in violation of OCGA § 40-5-20. See OCGA § 40-5-29.[2] This presumption may be defeated, however, if the defendant produces at trial their driver's license and demonstrates that it was valid at the time of the collision. See *Johnson v. State*, 165 Ga. App. 773, 776 (2) (302 SE2d 626) (1983); *McCook v. State*, 145 Ga. App. 3, 4 (1) (243 SE2d 289) (1978). To that end, Rocha testified that she possessed an "official" Brazilian driver's license, and she tendered a copy of the alleged license into evidence. The license was written entirely in Portuguese. Rocha argued that it was legal for her to drive in the United States under the authority of her Brazilian license and cited as authority Article VI of the 1943 Convention on the Regulation of Inter-American Automotive Traffic (hereinafter "Treaty"). The purpose of the Treaty was to establish uniform rules "to control and regulate international automotive traffic on their highways, and to facilitate the movement of motor vehicles" among the participating countries. Article VI of the Treaty reads, in part, as follows:

> Every motor vehicle operator before admission to international traffic shall have such driving license as may be required by the laws of his [country] or such as may be issued by any political subdivision thereof having legal authority to issue driving licenses. . . . No operator shall be admitted to international travel who is less than 18 years of age.

Notably, Article III of the Treaty provides that "[t]he operator of a motor vehicle circulating in any [country] which is a party to this Convention is subject to the traffic laws and regulations in force in that [country] or subdivision thereof."

---

[2] OCGA § 40-5-29 states as follows:
(a) Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle. (b) Every licensee shall display his license upon the demand of a law enforcement officer. A refusal to comply with such demand not only shall constitute a violation of this subsection but shall also give rise to a presumption of a violation of subsection (a) of this Code section and of Code Section 40-5-20.

After considering counsels' arguments and supplemental briefs, the trial court ruled that, even though Rocha testified about her Brazilian license, the license itself was the "highest and best evidence[3] as to whether Ms. Rocha had a driver's license and whether . . . that driver's license would fall under the [Treaty] would be a question that would have to be answered by the ability to read the document itself." The trial court noted that he was not able to read, write, or speak Portuguese and was, therefore, unable to read the document. Although a translator was present at trial, no translation of the license was submitted to the court. Finding that it was "unable to determine the validity of the document that has been presented and whether or not it is what it is purported to be," the trial court found Rocha guilty of driving without a valid driver's license.

On appeal, Rocha argues that, under the Treaty, the presentation of the alleged Brazilian license is all that is required to establish that she was driving legally on the streets of Georgia. However, the Treaty specifically subjects an international driver "to the traffic laws and regulations" of the state or country in which they are driving. This provision, therefore, supports a requirement that Rocha comply with OCGA § 40-5-20 (a), which requires drivers to have a "valid driver's license . . . for the type or class of vehicle being driven." See *Schofield v. Hertz Corp.*, 201 Ga. App. 830, 832 (2) (412 SE2d 853) (1991) (the treaty supersedes Georgia's statutory provisions only to the extent the provisions conflict with the treaty).

Since the State presented a prima facie case that Rocha did not have a Georgia license and, in fact, had no license in her possession at the time of the collision, Rocha bore the burden of establishing that she did, in fact, have a valid driver's license at that time. See *Jordan v. State*, 166 Ga. App. 417, 419 (1) (304 SE2d 522) (1983); *Days v. State*, 134 Ga. App. 585 (1) (215 SE2d 520) (1975); see also OCGA § 24-7-1 (proof of execution of an original writing must be proved); *Anderson v. Cuthbert*, 103 Ga. 767, 773 (30 SE 244) (1898) (the burden of proving the authenticity of an original writing falls on the party offering the evidence). Assuming, without deciding, that the Treaty applied herein, in order to demonstrate compliance with the Treaty, Rocha was required to show that the Brazilian driver's license in evidence fulfilled the requirements of the laws of Brazil, that the driver's license was issued by a Brazilian governmental agency that is authorized to issue such licenses, and that she was at

---

[3] See OCGA § 24-5-4. "The best evidence rule, or the 'original document rule,' provides that in order to prove the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent." (Punctuation and footnote omitted.) *Smith v. State*, 247 Ga. App. 516, 517 (1) (544 SE2d 208) (2001).

least 18 years old. Further, since the license itself was the best evidence of its validity and, therefore, its compliance with Georgia law, it must show on its face that it was valid on the date of the collision and authorized Rocha to drive the type or class of vehicle being driven. For lack of translation, the license showed neither. Cf. *Schofield v. Hertz Corp.*, 201 Ga. App. at 830, n. 1 (driver possessed a valid British driver's license, presumably written in English).

Therefore, the trial court was authorized to find that Rocha failed to establish that she possessed a valid driver's license at the time of the collision. Her conviction for driving without a valid license is affirmed.

*Judgment affirmed. Johnson, P. J., and Ruffin, J., concur.*

DECIDED JUNE 26, 2001.

*Robert E. Turner*, for appellant.
*Barry E. Morgan, Solicitor-General, Sandra G. Dawson, Jessica K. Moss, Assistant Solicitors-General*, for appellee.