A04A1531. ELDRIDGE v. THE STATE.
(606 SE2d 95)

ADAMS, Judge.

Charles Eldridge was convicted by a jury of two counts of aggravated assault. He appeals following the denial of his motion for new trial.

Taffee Lashonda Wright testified that around 6:30 a.m. on September 1, 2003, she was traveling down Highway 49 toward Fort Valley with her eight-year-old daughter, who was in the back seat, when she noticed a car pull alongside her. Wright heard a "popping" sound, and her daughter started screaming, "Fire, fire, I'm burning, I'm burning." Wright looked in her rearview mirror to see what was

---

wrong with her daughter, and noticed the car that had been traveling beside her swerve, straighten up and then start following her. Wright testified that the car would speed up when she sped up, and at one point the hazard lights were turned on. However, a short distance later the car turned off onto another road, and Wright was able to look at her child and saw that there was blood on her back. It was later determined that the child had been shot, and bullet fragments were recovered from her clothes.

Jackie Cooper, the Chief of Police for the City of Roberta testified that on September 1, 2003, shortly after 7:00 a.m., he received a call concerning a suspicious person at Haddock's Grocery store. When Cooper arrived at Haddock's, he observed a 1997 Oldsmobile sitting at the gas pump. Cooper asked the driver of the car, who he identified at trial as the defendant Charles Eldridge, for his driver's license and insurance information. The driver's license and insurance were valid, but Cooper noticed the car did not have a vehicle tag. Eldridge told Cooper that the tag had been lost but provided him with a tag number. Cooper allowed Eldridge to leave, and then called in the tag number. The tag came back as belonging to another vehicle, so Cooper proceeded to drive in the direction he observed Eldridge go in an attempt to intercept him. A short while later, Cooper saw the car Eldridge had been driving on the side of the road. The car door was open, and Eldridge was standing in front of the car. Cooper stopped and got out of his car and began walking toward Eldridge. As he passed Eldridge's open car door, he observed a silver semiautomatic weapon between the seat and the driver's door. Eldridge told Cooper the gun belonged to his wife, and Cooper picked it up for his safety while he was questioning Eldridge. Eldridge told Cooper he was sleepy from driving all night, and that was why he gave him the wrong tag number.

Deputy Tisdale from the Crawford County Sheriff's Office arrived and took over the investigation. Tisdale testified he had received a call from another county concerning a drive-by shooting involving a four-door Oldsmobile car. Tisdale testified he went to the scene where Eldridge was stopped on the side of the road after hearing a call from Cooper describing Eldridge's vehicle.

Cooper turned over the gun he recovered from Eldridge's vehicle to Tisdale, and the gun and bullet fragments recovered from the victim's clothes and the vehicle in which she was riding were sent to the State Crime lab for analysis. Melba Deveaux, a firearms examiner with the State of Georgia Bureau of Investigation Crime Laboratory, testified that one of the bullets tested was "more likely than not" fired from the gun recovered from Eldridge, and that she was able to make a "100 percent" identification that another bullet recovered from the scene had been fired from that gun.

1. Eldridge first contends that the evidence of the firearm, his vehicle and his statement to police should have been suppressed because these were the result of an illegal stop, search, seizure and questioning. The evidence at the motion to suppress hearing, including Eldridge's own testimony, as well as the evidence at trial, showed that Eldridge was already stopped on the side of the road when he was approached the second time by Officer Cooper. Thus, as the trial court held, there was no stop in this case, as Eldridge was already sitting on the side of the road when Cooper saw him. Moreover, Cooper had a right to question Eldridge concerning the incorrect tag number, and after Cooper saw the gun in plain view in the car he had a right to retrieve it for his own safety. " 'A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be. And where such a plain-view seizure takes place, there is in effect no search at all.' (Citations and punctuation omitted.) *Massengale v. State*, 189 Ga. App. 877, 879 (3) (377 SE2d 882) (1989)." *Clark v. State*, 235 Ga. App. 569, 574 (2) (c) (510 SE2d 319) (1998). Lastly, although Eldridge complains his statement to Tisdale that he was a convicted felon should have also been suppressed, the trial transcript shows that neither this statement nor the fact that Eldridge was initially arrested on charges of possession of a firearm by a convicted felon was admitted into evidence at trial. Eldridge's first enumeration of error is thus without merit.

2. Although Eldridge did not testify at trial, he next contends that the trial court erred in ruling that his statement to his parole officers, which was given without *Miranda* warnings, could be introduced into evidence as impeachment evidence if in fact he did testify and denied that he fired a shot from his gun. Contrary to Eldridge's argument on appeal, the record is somewhat unclear concerning whether the trial court made that specific ruling. Moreover, a prior inconsistent statement is admissible for impeachment purposes even if *Miranda* warnings were not given, although the trial court in this circumstance has a duty to give appropriate limiting instructions. See *State v. Byrd*, 255 Ga. 665 (341 SE2d 455) (1986); *Jones v. State*, 243 Ga. 820, 826 (6) (256 SE2d 907) (1979); *Cribbs v. State*, 204 Ga. App. 109-110 (418 SE2d 405) (1992); *Tew v. State*, 179 Ga. App. 369, 372-373 (2) (346 SE2d 833) (1986); *Graham v. State*, 175 Ga. App. 411, 414 (5) (333 SE2d 664) (1985). This enumeration is also without merit.

3. In his next two enumerations of error, Eldridge contends the trial court erred by failing to give his requests to charge on identification and alibi. However, there was no identification testimony in this case, and the evidence did not warrant a charge on identification. *Bailey v. State*, 259 Ga. App. 293, 295 (2) (576 SE2d 668) (2003). Likewise, no alibi testimony or evidence which would negate the

possibility of Eldridge being at the scene of the shooting was presented, and thus the trial court did not err in refusing to give Eldridge's requested alibi charge. *Jones v. State*, 266 Ga. App. 679, 684 (4) (598 SE2d 65) (2004); *Evans v. State*, 240 Ga. App. 297, 299 (3) (523 SE2d 103) (1999).

4. Contrary to Eldridge's final enumeration of error, the evidence presented at trial was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 14, 2004.

*Robert M. Bearden, Jr.,* for appellant.
*Howard Z. Simms, District Attorney,* for appellee.