## A06A1077. BOWDEN v. THE STATE.
### (630 SE2d 792)

BLACKBURN, Presiding Judge.

Arthur Bowden appeals his convictions for trafficking in methamphetamine and for possessing methamphetamine, following a jury trial. He argues that the court erred in (i) denying his motion to suppress evidence discovered in a vehicle, (ii) denying his motion for new trial based on ineffective assistance of counsel, (iii) admitting a confession he made to police, (iv) admitting statements made by an absent co-defendant to an informant, and (v) denying his motion for mistrial based on the informant's testimony that the informant knew Bowden's vehicle from prior deals. Discerning no error, we affirm.

Construed in favor of the verdict, *Short v. State,*[1] the evidence shows that to obtain leniency in another criminal matter, an informant agreed with police that he would set up a drug deal with his drug-source contacts (Shawn Kilgore and Bowden) so that police could snare these two individuals for selling a large amount of methamphetamine. The informant called Kilgore, who agreed to contact Bowden (known to the informant and Kilgore also as "the queer") to obtain the methamphetamine. Kilgore called back, claiming Bowden had agreed to sell methamphetamine to the informant,

---

[1] *Short v. State,* 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

and a deal was struck for four ounces of methamphetamine at a price of $5,200. The informant told police that Bowden owned and often drove a silver Mercedes coupe (two-door) with a blue aluminum dealer's tag.

The informant and Kilgore arranged for the transaction to take place in a local parking lot. After photocopying the bills, police gave the informant $5,200 in cash, wired him for audio, and set up a visual surveillance of the parking lot, which included some nonuniformed officers in unmarked cars in the parking lot and a uniformed officer in a marked police car located nearby. Police confirmed that a silver Mercedes coupe with a dealer tag was located at a drinking establishment a few miles away, which Kilgore and Bowden frequented.

While the informant waited in a vehicle in the parking lot, police observed the same silver Mercedes with the dealer tag enter the parking lot and park not far from the informant. Immediately thereafter, a silver Taurus (driven by Bowden with Kilgore in the passenger seat) also entered the parking lot and parked next to the informant's vehicle. The driver of the Mercedes made some hand signals, and Kilgore exited the Taurus and entered the informant's vehicle. Kilgore gave the informant two ounces of methamphetamine in exchange for $2,000 and promised to return shortly with two more ounces from Bowden to be given in exchange for the rest of the money.

When Kilgore exited the informant's vehicle and approached the Taurus, police signaled a "takedown" and converged on the vehicles. Before Kilgore could enter the Taurus, Bowden drove off and was chased by police. Other officers arrested Kilgore on the spot. The uniformed officer in the marked police car approached the silver Mercedes and sought identification from the driver, who had no driver's license or other identification. The officer asked the driver, who gave his name as Walters, to wait until a detective arrived from the nearby arrest of Kilgore. Walters was not in custody. A few minutes later, the detective came over and asked Walters for consent to search the Mercedes, which Walters initially gave but then immediately withdrew on the ground that the vehicle did not belong to him but belonged to Bowden. The detective called a local K-9 unit to come and do a "free air" search around the vehicle. The K-9 unit arrived within minutes, and, without placing its head in the vehicle, the trained dog alerted to drugs at the Mercedes's doors. The ensuing police search turned up a pistol and a small amount of methamphetamine in the Mercedes. Walters was arrested for possessing methamphetamine and for possessing a gun while committing the crime of possessing methamphetamine.

The police chasing Bowden eventually caught and arrested him. Police found three grams of methamphetamine in his pocket and the $2,000 (the same bills given by the informant to Kilgore) in his wallet.

After being *Mirandized* at police offices, Bowden confessed that Kilgore had arranged for Bowden to sell four ounces of methamphetamine to the informant, that Bowden had received the $2,000 in the parking lot to buy half the methamphetamine, and that Bowden had had methamphetamine in his pocket when police apprehended him.

Kilgore and Bowden were indicted for trafficking in methamphetamine, and Bowden was further indicted for possessing methamphetamine. Walters was indicted for conspiring to traffic, for possessing methamphetamine, and for possessing a firearm while committing the crime of possessing methamphetamine. Bowden moved to suppress the methamphetamine and gun found in the Mercedes and moved in limine to exclude his confession to police, both of which motions the court denied following evidentiary hearings. After changing trial counsel, Bowden just before trial filed a general and a special demurrer to the indictment, which the court considered and denied.

Out on bond, Kilgore did not appear for trial, and a bench warrant was issued for his arrest. A jury found Bowden guilty of trafficking in methamphetamine and of possessing methamphetamine, but acquitted Walters of all charges. Bowden moved for a new trial, arguing his first counsel was ineffective in failing to file a special demurrer to the indictment. Following a hearing, the court denied this motion.

1. Bowden first claims that the court erred in denying his motion to suppress the evidence discovered in the search of his Mercedes following the drug dog's alert to the vehicle. This evidence included a small amount of methamphetamine and the gun.

This evidence, however, was not used to prove the charges against Bowden, but was used (unsuccessfully) to prove the drug and gun possession charges against co-defendant Walters, who was driving the Mercedes. The charges against Bowden were for trafficking in methamphetamine (which was based on the 38 grams of methamphetamine sold to the informant) and for possessing methamphetamine (which was based on the small amount of methamphetamine found in Bowden's pocket when he was arrested). Bowden's claim that perhaps the methamphetamine found in the Mercedes was used to prove his own possession conviction is belied not only by the State's repeated statement to the jury in opening statement and in closing argument (and to the court in responding to Bowden's motion for directed verdict) that the methamphetamine in Bowden's pocket was the basis for the possession charge against Bowden, but also by Bowden's counsel's own arguments to the court and jury indicating he understood such. Accordingly, Bowden can show no harm from the denial of his motion to suppress evidence, as that evidence was not

used to convict him. Cf. *State v. Shuman*[2] (where jury acquits defendant of charges that were to be proven by the evidence sought to be suppressed, there is no harm to the defendant by the court's denying the motion to suppress).

Moreover, the motion to suppress was properly denied. We uphold the court's factual findings on a motion to suppress where there is any evidence to support them. *Pruitt v. State.*[3] Here, the court found that the uniformed officer's initial approach to the Mercedes was a first-tier police-citizen encounter, which requires no reasonable suspicion or probable cause. See id. at 816-817 (1). Because evidence showed that the Mercedes was already stopped when the uniformed officer approached and asked Walters for identification, evidence supported the court's finding that this was a first-tier encounter. Id. at 817 (1). When Walters admitted he had no driver's license or other identification, the officer had reasonable suspicion that Walters was violating the law by driving without a license and was justified in detaining him from driving off in the vehicle. See generally OCGA § 40-5-20 (a); *Rocha v. State.*[4] Furthermore, the officer also had reasonable suspicion of criminal drug activity based on the following information: the informant, who was working with police to conduct the drug deal, had described a silver Mercedes coupe (two-door) with dealer tags as the target vehicle belonging to Bowden, and police had confirmed this vehicle was just at the establishment frequented by Bowden; Walters drove up in the vehicle just before Bowden arrived in the silver Taurus, at the very time and place designated for the drug transaction with Kilgore and Bowden; Walters parked near the drug transaction; and Walters made hand signals just before Kilgore exited the Taurus, which could be inferred to be counter-surveillance signals that Walters saw no police and that the transaction could go forward.

Because these circumstances authorized the officer to conduct an investigative detention of Walters and the vehicle, the bringing of the drug dog to the scene during that brief detention was proper. *Gary v. State of Ga.*[5] When the drug dog alerted to the vehicle as containing drugs, the subsequent warrantless search of the vehicle was justified. See *Williams v. State*[6] ("the 'alert' of a trained narcotics dog, standing alone, [is] sufficient to provide probable cause for the search of a vehicle"). See generally *Pennsylvania v. Labron*[7] ("[i]f a car is readily

[2] *State v. Shuman*, 161 Ga. App. 304, 306 (4) (287 SE2d 757) (1982).

[3] *Pruitt v. State*, 263 Ga. App. 814, 815 (589 SE2d 591) (2003).

[4] *Rocha v. State*, 250 Ga. App. 209, 210 (551 SE2d 82) (2001).

[5] *Gary v. State of Ga.*, 249 Ga. App. 879, 880-881 (1) (549 SE2d 826) (2001).

[6] *Williams v. State*, 273 Ga. App. 637, 639 (1) (615 SE2d 789) (2005).

[7] *Pennsylvania v. Labron*, 518 U. S. 938, 940 (116 SC 2485, 135 LE2d 1031) (1996).

mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more").

2. Bowden argues that the court erred in denying his motion for new trial, which was based on his claim that his first trial counsel provided him with ineffective assistance. Specifically, Bowden contends that his first trial counsel failed to file a special demurrer to the indictment to determine whether the drugs in Bowden's pocket or the drugs in his Mercedes were the basis for the charge of possession of methamphetamine against Bowden.

"To establish a claim of ineffective assistance of trial counsel, the defendant must show that counsel's performance was deficient and the deficient performance prejudiced the defense." *Stuart v. State.*[8] We review the trial court's findings of fact under a "clearly erroneous" standard. *Johnson v. State.*[9]

Regardless of whether Bowden showed that his first counsel's failing to file the special demurrer was deficient, he did not show that such prejudiced his defense. His second trial counsel did in fact file a special demurrer just before trial, which the trial court considered (despite its untimeliness) and denied. Bowden has not enumerated this denial as error, and therefore the arguments in his brief that a special demurrer should have been granted are not before us. See *Fuller v. State*[10] ("[a]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumerations of errors") (punctuation omitted).

Moreover, we note that had the special demurrer been granted, the State could have simply reindicted Bowden. *Wallace v. State.*[11] In fact, Bowden's first trial counsel testified that had he filed a special demurrer and won, the State could have reindicted Bowden on additional charges, worsening Bowden's position. Because of such considerations, the Supreme Court of Georgia in *Cotton v. State*[12] has generally concluded that "the failure to file a special demurrer . . . would not support a finding of the violation of the constitutional right to effective legal representation."

We hold that the trial court did not clearly err in determining that Bowden's claim of ineffective assistance of counsel lacked merit.

3. Bowden contends that the trial court erred in finding his confession to police was voluntary. Specifically, Bowden testified that

---

[8] *Stuart v. State*, 274 Ga. App. 120, 121 (616 SE2d 855) (2005).
[9] *Johnson v. State*, 266 Ga. 380, 383 (2) (467 SE2d 542) (1996).
[10] *Fuller v. State*, 262 Ga. App. 656, 657 (1) (586 SE2d 359) (2003).
[11] *Wallace v. State*, 253 Ga. App. 220, 223 (3) (558 SE2d 773) (2002).
[12] *Cotton v. State*, 279 Ga. 358, 361 (5) (613 SE2d 628) (2005).

he was promised that a "pound of speed" would set him free and that he would be released from jail if he made the statement to police. The interviewing officers testified that they made no promises or threats to Bowden, and they specifically denied making the statements referenced by Bowden. Bowden also signed a document in which he acknowledged that no benefits had been promised him.

> Under OCGA § 24-3-50, a confession is inadmissible unless it is made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. . . . It is the task of the trial court to determine whether a confession was voluntary, taking into account the totality of the circumstances. We will not disturb the trial court's factual and credibility determinations on appeal unless they are clearly erroneous.

(Punctuation and footnote omitted.) *Bailey v. State.*[13] Here, the trial court specifically found the officers' testimony to be more credible than Bowden's testimony and determined that Bowden gave his statement voluntarily without any hope of benefit or fear of injury. Because some evidence supported the trial court's findings, those findings are not clearly erroneous.

4. Bowden complains that the trial court erred in admitting (over objection) those statements made by co-defendant Kilgore to the informant, which statements incriminated Bowden. Citing *Bruton v. United States*[14] and *Crawford v. Washington,*[15] Bowden argues that inasmuch as Kilgore did not appear for trial and was not available for cross-examination, Bowden's Sixth Amendment rights were violated.

The incriminatory statements were in recorded telephone conversations, in which Kilgore told the informant that Kilgore would talk to and make arrangements with Bowden (known by his nickname, "the queer") to have Bowden sell the informant the desired amount. Kilgore designated the time and place for the transaction, and then appeared at this time and place with Bowden driving the vehicle.

The Supreme Court of Georgia in *Neason v. State*[16] addressed the *Bruton* argument in the context of a statement made by a fellow criminal in a criminal enterprise:

---

[13] *Bailey v. State*, 248 Ga. App. 120, 121 (545 SE2d 659) (2001).
[14] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).
[15] *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).
[16] *Neason v. State*, 277 Ga. 789, 790-791 (2) (596 SE2d 120) (2004).

*Bruton* provides that the admission of a non-testifying co-defendant's confession implicating the accused may violate the Confrontation Clause of the Sixth Amendment of the United States Constitution. However, [co-defendant's] incriminating statement was made shortly after the crimes occurred, was made prior to arrest, and was a non-custodial statement to an acquaintance rather than to police officers. Thus, it is more properly characterized as a declaration of a co-conspirator, rather than a confession. We must therefore determine whether the trial court properly admitted [co-defendant's] statement under the exception to the hearsay rule for declarations of a co-conspirator.

(Citations omitted.) Id.

Similarly, Kilgore's statements here, which were made during the pendency of the criminal project, were made to the informant, not to police. Kilgore also indicated that he was conspiring with Bowden to effectuate the desired sale of methamphetamine. Therefore, the question is whether the trial court properly admitted Kilgore's statement under the exception to the hearsay rule for declarations of a co-conspirator.[17] In this regard, *Neason* stated further:

Statements made by a co-conspirator during the pendency of the criminal project, including the concealment phase, are admissible against all other co-conspirators. The admission of a co-conspirator's statement does not violate the Confrontation Clause as long as there are sufficient indicia of reliability. Factors indicating reliability include (1) the absence of an express assertion of past facts, (2) the co-conspirator had personal knowledge of the facts he was stating, (3) the possibility that the co-conspirator's recollection was faulty was remote, and (4) the co-conspirator had no reason to lie about the defendant's involvement in the crime.

(Citations and punctuation omitted.) Id. at 791 (2).

The evidence establishes that Kilgore was not asserting past facts and that he had personal knowledge of the identities and roles of the participants in that he was personally involved in negotiating the transaction. The possibility that his statements were founded on

---

[17] We also note that the trial court instructed the jury that it first had to find a conspiracy existed before it could consider co-conspirator's statements as evidence against other co-conspirators.

faulty memory is decidedly remote, in that the referenced occurrences were taking place almost simultaneously with his statements. Believing that he was setting up a lucrative drug deal with a sympathetic customer, he had no reason to lie about Bowden's involvement in the crime.

Considering these factors, we conclude that sufficient indicia of reliability exist such that the admission of Kilgore's statement to the informant did not violate Bowden's rights under the Confrontation Clause. See *Neason*, supra, 277 Ga. at 791. The statements were properly admitted as declarations made by a co-conspirator during the pendency of the criminal project. See id.

Regarding the *Crawford* argument, we note that *Crawford* held that the admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford*, supra, 541 U. S. at 68. See *Pitts v. State*.[18] "When the statement at issue is non-testimonial in nature, however, the State's normal rules regarding the admission of hearsay apply." Id. Here, Kilgore's statements to the informant during a criminal enterprise were undisputedly nontestimonial in nature (i.e., not designed to establish evidentiary facts), and therefore *Crawford* does not apply. Accordingly, Georgia's normal rules regarding statements of co-conspirators applies to admit these statements, even though Kilgore did not testify at trial. See *Owens v. State*.[19]

5. Bowden contends that the trial court erred in denying his motion for mistrial, which arose when the informant was asked how he knew that the Mercedes that pulled into the parking lot belonged to Bowden. He responded, "From prior deals with Artie." Finding that the comment did not necessarily imply prior criminal dealings and therefore did not place Bowden's character in evidence, the court denied the motion and also instructed the jury that it could not infer that the prior deals referred "in any way to any sort of criminal activity." The court denied Bowden's renewal of his motion for mistrial.

The decision of whether statements which impermissibly place a defendant's character in issue are so prejudicial as to warrant a mistrial is for the discretion of the trial court. Appellate courts will look at the relevant circumstances to determine if the trial court abused its discretion in denying

---

[18] *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006).
[19] *Owens v. State*, 251 Ga. 313, 317-318 (2) (305 SE2d 102) (1983).

the motion for mistrial. Some of the factors and circumstances to be reviewed include the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.

*Binns v. State.*[20]

We hold that the trial court did not abuse its discretion here, as ample evidence supported its finding that the testimony did not necessarily imply criminal activity; moreover, the court instructed the jury that it could not infer criminal activity from the testimony. As noted by the court, the informant had testified that he had worked as an auto mechanic the last 15 years, and therefore his knowing the Mercedes "[f]rom prior deals with Artie" could well have referred to prior auto repair deals with Bowden. To ensure the jury would not make an improper inference from this testimony, the court carefully instructed the jury:

> In reference to the — in reference to the witness'[s] last statement about his — about dealings with the Defendant Bowden, you may not — you may not infer that that means in any way, shape, form or fashion any sort of criminal activity in any way. Okay.
> You may not make that inference that that refers in any way to any sort of criminal activity.

In light of the equivocal nature and context of the statement and in light of the court's subsequent curative instruction, we can find no abuse of the broad discretion vested in the trial court in matters such as this. See *Grindle v. State.*[21]

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MAY 3, 2006.

*Jeffrey S. Purvis*, for appellant.
*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.

---

[20] *Binns v. State*, 237 Ga. App. 719, 720 (2) (516 SE2d 583) (1999).
[21] *Grindle v. State*, 265 Ga. App. 717, 718 (1) (595 SE2d 549) (2004).