**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 25, 2012**

# In the Court of Appeals of Georgia

A12A1078. CHAMBLEE v. THE STATE.

PHIPPS, Presiding Judge.

Jennifer Chamblee appeals her conviction for possession of a drug related object,[1] contending that the trial court erred by denying her motion to exclude incriminating evidence. Specifically, she maintains that her statement to a police officer that she had a "crack pipe," and then her production thereof to the officer, occurred during an illegal seizure. Because the trial court was authorized to reject Chamblee's argument that the evidence was obtained in violation of the Fourth Amendment, we affirm.

---

[1] OCGA § 16-13-32.2 (a).

"In a ruling on a motion to suppress, a trial court's findings as to disputed facts will be reviewed under a clearly erroneous standard and the trial court's application of the law to undisputed facts is subject to de novo appellate review."[2]

The officer who obtained the evidence at issue was the sole witness at the combined suppression hearing/bench trial.[3] On July 5, 2010, the uniformed officer was on patrol in his marked squad car in what he considered a "known drug area."[4] The officer testified that he observed Chamblee, whom he recognized, walk initially toward a man sitting in a parked vehicle, then abruptly stop when she saw his squad car. The officer further testified that, while he had not witnessed Chamblee commit

---

[2] *Canty v. State*, 286 Ga. 608 (690 SE2d 609) (2010) (citation and punctuation omitted).

[3] See generally *White v. State*, 263 Ga. 94, 98 (5) (428 SE2d 789) (1993) (suppression hearing transcript and trial transcript may be considered on review of suppression ruling); *Arnold v. State*, 304 Ga. App. 90, n. 2 (695 SE2d 402) (2010) (same).

[4] See generally *Illinois v. Wardlow*, 528 U. S. 119, 124 (120 SC 673, 145 LE2d 570) (2000) (while officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation, an individual's mere presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime); *In the Interest of J. B.*, 314 Ga. App. 678, 682 (1) (725 SE2d 810) (2012) (mere presence in area known to the police for criminal activity, without more, is insufficient to support a reasonable suspicion that one is engaged in or about to engage in criminal activity).

2

any crime, he stopped and exited his vehicle, said her name, then walked to her to interview her. He asked Chamblee whether she had any weapons or drugs and whether he could search her person. The officer testified that, at that point, Chamblee was not under arrest and that she was free to walk away. Chamblee replied, however, that she had a "crack pipe" underneath her clothing. The officer asked her to show it to him, and Chamblee complied.[5]

On appeal, Chamblee contends that the trial court erred by not excluding the incriminating evidence on the ground that the underlying police encounter violated the Fourth Amendment. This contention is without merit for the following reasons.

In construing the Fourth Amendment, the Supreme Court of the United States has set forth three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by

---

[5] See *Jones v. State*, 237 Ga. App. 847, 850 (3) (515 SE2d 841) (1999) (possession of a "crack pipe" is possession of a drug related object in contravention of OCGA § 16-13-32.2).

reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause."[6]

Chamblee argues that the officer's exiting his squad car, saying her name, and approaching her with inquiries amounted to sufficient coercion to give rise to a "tier-two" encounter – a brief seizure that must be accompanied by a reasonable suspicion. These actions by the officer were *not* supported by a reasonable suspicion, Chamblee asserts, pointing out further that the officer admittedly had observed her engage in no illegal conduct.

However, "the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens."[7]

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask

---

[6] *In the Interest of J. B.*, supra at 680 (1) (punctuation and footnote omitted), citing *Terry v. Ohio*, 392 U. S. 1, 21 (III) (88 SC 1868, 20 LE2d 889) (1968).

[7] *Lucas v. State*, 284 Ga. App. 450, 452 (644 SE2d 302) (2007) (punctuation and footnote omitted).

4

for identification . . . – provided they do not induce cooperation by coercive means. If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.[8]

Examples of circumstances that might indicate a second-tier detention, "even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."[9]

---

[8] *United States v. Drayton*, 536 U. S. 194, 200-201 (II) (122 SC 2105, 153 LE2d 242) (2002) (citations and emphasis omitted); see *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991) (a seizure does not occur simply because a police officer approaches an individual and asks a few questions; the encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature); *Terry*, supra at 19, n. 16 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); *Lucas*, supra (during first-tier encounter, "an officer may approach citizen[ ], ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officer[ ] do[es] not detain the citizen or create the impression that the citizen may not leave"); *In the Interest of D. H.*, 285 Ga. 51, 53-54 (2) (673 SE2d 191) (2009); *In the Interest of S. B.*, 207 Ga. App. 60, 62 (427 SE2d 52) (1993).

[9] *Bothwell v. State*, 250 Ga. 573, 577-578 (4) (300 SE2d 126) (1983) (citation and punctuation omitted); see *Santos v. State*, 306 Ga. App. 772, 774 (1) (703 SE2d 140) (2010) (concerning "circumstances that might indicate a second-tier detention").

Here, the evidence authorized the trial court to conclude that the officer's approach of and initial inquiries to Chamblee amounted to a first-tier encounter that did not have to be supported by reasonable suspicion of criminal wrongdoing.[10] "The only evidence in the record is [the officer's] testimony. There was no evidence that [the officer] engaged his siren and emergency equipment, drew his firearm, or made any other show of force. Nor is there any evidence that the officer threatened, coerced, or physically restrained appellant."[11] There was no evidence that the officer physically touched Chamblee's person or used either language or a tone of voice reflecting that compliance with his request was compelled. Further, the officer

---

[10] See *State v. Westmoreland*, 204 Ga. App. 312 (1) (418 SE2d 822) (1992) ("merely approaching an individual and requesting that he give his consent for a search does *not* constitute a seizure and need *not* be supported by an articulable suspicion") (emphasis in original); see also *Foster v. State*, 285 Ga. App. 441-443 (646 SE2d 302) (2007) (officer's testimony authorized the trial court to find that his encounter with defendant was consensual and that defendant's consent to search was freely given); see also *In the Interest of D. H.*, supra; *In the Interest of S. B.*, supra.

[11] *Lucas*, supra (punctuation and footnote omitted). See *Drayton*, supra; *Bostick*, supra; *Terry*, supra; *In the Interest of D. H.*, supra; *In the Interest of S. B.*, supra.

testified that Chamblee was not then under arrest and was free to leave the scene, and the record contains no evidence to the contrary.[12]

It was during their first-tier encounter that Chamblee told the officer that she had a crack pipe on her person, which supplied the officer with reasonable suspicion for the ensuing detention.[13] And as Chamblee concedes in her appellate brief, it was upon her incriminating admission that the officer immediately asked for and she relinquished the crack pipe. Contrary to Chamblee's contention, the trial court did not err by concluding that no unlawful seizure occurred.[14]

---

[12] See generally *In the Interest of D. H.*, supra at 54 (noting officer's testimony at suppression hearing that neither she nor her partner did anything to make defendant feel that he was not free to leave); *Lucas*, supra (noting officer's testimony at suppression hearing that he did nothing to make defendant feel as though he was not free to leave and noting further the absence of any evidence to the contrary).

[13] See *Bowden v. State*, 279 Ga. App. 173, 176 (1) (630 SE2d 792) (2006) (reasonable suspicion to detain driver from driving off in vehicle was supplied by driver's admission to police during first-tier encounter that he had no driver's license or other identification); *United States v. Lewis*, 674 F3d 1298, 1304 (III) (A) (11th Cir. 2012) (based on defendant's admission that he was carrying a handgun in his waistband, the officers had reasonable suspicion to believe that defendant was violating Florida law that "a person who carries a concealed firearm on or about his person commits a felony of the third degree").

[14] See *In the Interest of D. H.*, supra; *Foster*, supra; *Lucas*, supra; *Bowden*, supra; *In the Interest of S. B.*, supra; *Westmoreland*, supra.

Nothing in *Gattison v. State*,[15] upon which Chamblee relies, demands an outcome in her favor. In that case, "[t]he trial court found, and the parties agree[d] in their briefs, that [the officer] conducted a second-tier investigatory stop by 'not allowing [the defendant] to continue on his way away from the officer's questioning.'"[16] In this case, as stated above, the evidence permitted the trial court to find that, prior to the incriminating answer, the officer did not disallow Chamblee from continuing on her way and that the portion of the police-citizen encounter at issue here thus constituted a first-tier police-citizen encounter.

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[15] 309 Ga. App. 382 (711 SE2d 25) (2011).

[16] Id. at 383.