al reason.

## 34775. JONES v. THE STATE.

BOWLES, Justice.

Howard Jones, the defendant, was convicted of armed robbery and murder by a DeKalb County jury. He was sentenced to life imprisonment for the armed robbery and to death for the murder. His case is here on direct appeal and for mandatory review of his death sentence.

We affirm.

The evidence presented at trial authorized the jury to find that defendant, his brother Gilbert Jones and another man named James Ameen conspired to rob a courier at a Seven-Eleven store. The courier's job was to collect money taken in at various Seven-Eleven stores and the Seven-Eleven store which was the scene of this crime was toward the end of his route. The courier was accompanied by an armed guard, Frank Shelnut, the murder victim.

On the morning of the crime, two employees of the store and Frank Shelnut were in the public area of the store while the courier was in a back office counting money. During the course of the robbery, a struggle ensued between Frank Shelnut and one of the robbers and shots were fired. James Ameen and Gilbert Jones were wounded (Gilbert Jones is now paralyzed from the waist down). Frank Shelnut was killed, having been shot six times. Gilbert Jones and James Ameen were arrested the same day while at Grady Hospital seeking treatment for their wounds. Howard Jones was arrested that evening.

Along with a great deal of circumstantial evidence linking defendant to the crime, one of the employees of the store identified defendant as being at the scene of the crime from a photographic line-up. A witness who arrived at the scene as defendant and James Ameen were dragging Gilbert Jones out the store identified defendant from a photographic line-up although she was later unable to pick him out of a physical line-up.[1] Both

---

[1]This witness was a high school student and testified

witnesses identified defendant at trial. James Ameen testified as a witness for the State, related the course of events in planning and carrying out the robbery and identified the defendant as the robber who shot the victim repeatedly.

At trial, defendant testified in his own behalf and stated that he was at home during the robbery. He said that his only contact with any of the events pertaining to the crime occurred when Gilbert Jones showed up at his (defendant's) apartment wounded and defendant had to call another brother to take him to the hospital.

After deliberating for 50 minutes, the jury returned a verdict of guilty of both armed robbery and murder. After the pre-sentence hearing, after returning twice for re-instruction, and after deliberating a total of 58 minutes, the jury returned with a recommendation of the death penalty finding the following aggravating circumstances: (1) "The offense of murder was committed while the offender was engaged in the commission of another capital felony, to-wit: armed robbery." (2) "The offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person."

Defendant brings sixteen enumerations of error to this court.

1. In his first, thirteenth and fourteenth enumerations of error, defendant contends that the exclusion of death-scrupled jurors denied him an impartial jury under Witherspoon. Three jurors (or possibly four)[2] were excused by the court for cause based on their answers to questions about their feelings on the death penalty. Because when the twelfth juror was impaneled, the State had only used four of its allotted ten

---

that, having never seen a line-up, she was greatly upset to see the line of men pressed up against glass. She was very positive as to her identification at trial.

[2]The record does not show that the fourth juror in question was excused at all. Apparently she was, however, because that would leave the correct number of

peremptory strikes, we need not consider whether or not the rule established in Witherspoon was in fact violated. If these three or four jurors had not been removed for cause, the state could have used its peremptory strikes to remove them as it did in the case of two other jurors who expressed reservations about the death penalty. Therefore, any error in excluding any juror for cause was harmless. *Alderman v. State,* 241 Ga. 496 (246 SE2d 642) (1978). Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967). See also *Ruffin v. State,* 243 Ga. 95 (3) (252 SE2d 472) (1979).

Defendant also argues that not even peremptory strikes can be used to remove death-scrupled jurors from the jury panel. We do not agree. The permissibility of the use of peremptory strikes to remove death-scrupled jurors who could not be removed for cause has not yet been decided by the United States Supreme Court. However, the validity of such use was established by implication in *Alderman,* supra, by the finding of harmless error when the state had unused peremptory strikes. Further, the reasoning of the United States Supreme Court in Swain v. Alabama, 380 U. S. 202 (85 SC 824, 13 LE2d 759) (1965), involving the use of the peremptory challenge to remove blacks from the jury is equally applicable in this situation. In Georgia, as elsewhere, " '[a] peremptory challenge is an arbitrary or capricious species of challenge to a certain number of jurors allowed to the parties without the necessity of their showing any cause therefor. In the very nature of such a challenge no reason need be shown or assigned for the exercise of the right.' " *Jordan v. State,* 235 Ga. 732, 733 (222 SE2d 23) (1975). To scrutinize and test the reasons behind a peremptory challenge is to destroy its peremptory nature. Allegations of "systematic exclusion" as defined in Swain v. Alabama, supra, raised for the first time after verdict, present nothing for review.

We find no error based on defendant's first, thirteenth and fourteenth enumerations of error.

2. In his second enumeration of error, defendant

---

jurors at the end of voir dire. Furthermore, the defendant contends that four jurors were excused for cause.

contends that a mistrial should have been granted based on the prosecutor's improper opening remarks. During his opening statement, the prosecutor referred to a statement made by co-accused James Ameen by stating to the jury, "The evidence will show you that he identified Howard Jones as the person who had actually shot and killed the security guard." Defendant's counsel objected arguing that this was a reference to a confession of a co-accused which would not be admissible into evidence. We find that the trial court correctly overruled the motion for mistrial on this point. The co-accused himself took the stand and testified to the same facts as those to which he testified in his previous statement. Testimony about the prior consistent statement itself was proper to rebut defendant's attempt to show that the co-accused's trial testimony was a fabrication in exchange for a lesser sentence for himself. See *Fuller v. State,* 197 Ga. 714 (2) (30 SE2d 608) (1944).

Defendant's second enumeration of error is without merit.

3. In his third enumeration of error defendant complains that the trial court erroneously permitted the jury to disperse overnight during the trial. We find no error.

Code Ann. § 59-718.1 gives the trial court discretion to permit members of the jury to disperse under appropriate instruction except in cases in which the prosecution is seeking the death penalty. See *Jordan v. State,* supra. Even if the prosecution is seeking the death penalty, the trial court may permit jury dispersal with the consent of the accused. *Mason v. State,* 239 Ga. 538 (238 SE2d 79) (1977). It is undisputed that the defendant in the case at bar consented through his attorney and in his own words to the dispersal of the jury. Defendant, however, now asserts that he was coerced into consenting because of the prosecutor's reference to "locking up" the jury. While such an expression may be an inappropriate synonym for "sequestration" we cannot say that a new trial is merited as a result of its use. Defendant's attorney had already mentioned sequestration himself in front of the jury. No request for corrective action was made at trial because of the prosecutor's statement nor did defendant or his

attorney indicate at any time that they felt coerced into waiving sequestration. Further, defendant has failed to show how failure to sequester the jury has harmed him. See *Mason v. State,* supra. Defendant contends that published accounts of the trial appeared in the general media but the one newspaper article attached to his brief to this court was written after the jury's verdict was rendered in the case.

We find no merit in defendant's third enumeration of error.

4. In his fourth enumeration of error defendant asserts that the trial court erroneously permitted a state witness to state a conclusion based on speculation. The witness, a forensic serologist, was testifying about her examination of blood stains on the defendant's underclothing. She testified that she found blood on his T-shirt but that she was unable to determine whether or not it was human blood. When the prosecutor asked why, the defendant's attorney objected, but the trial court permitted the expert witness to state her opinion. The witness testified that the stain was a dilute stain which could have been the result of laundering. The results of her tests were the results one gets if a stain has been laundered.

The defense stipulated that the witness was qualified as an expert in the field of forensic serology. As an expert, the witness was permitted to state her opinion based on her tests. See Code Ann. § 38-1710. See also *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977) wherein a fingerprint expert was permitted to state his opinion as to why no fingerprints were found at the scene of the crime. The witness' testimony was within her field of expertise and we find no error in permitting her to state her opinion.

5. In his fifth enumeration of error, the defendant contends that the trial court erred in allowing the state to impeach its own witness. The state called Ellen Jones, the wife of a co-accused, to the stand to testify as to the presence of the defendant at her home prior to the robbery. However, instead she testified that she could not remember the defendant being at her house that morning. The state then pleaded surprise and proceeded to impeach the witness by her previous inconsistent statement

placing the defendant at her home with her husband and the other co-accused.

Defendant claims that the state did not show that it was entrapped and, therefore, should not have been permitted to impeach the witness. Had defendant objected at trial, perhaps the prosecution would have made a more elaborate showing of surprise. See *State v. Westberry,* 238 Ga. 648 (235 SE2d 140) (1977). On the contrary, defendant's attorney acceded to the state's plea. There is no indication from the record that the state was not "surprised" by the witness' testimony and, in any event, total suprise is not required. *Wilson v. State,* 235 Ga. 470 (219 SE2d 756) (1975). Under the circumstances, the trial court did not err in permitting the prosecutor to impeach the witness.

6. In his sixth enumeration of error, defendant contends that the trial court erred in allowing into evidence certain statements made by the defendant while in a custodial line-up without benefit of counsel. At trial, defendant testified that he did not know anything about blood on his T-shirt until he heard it in court. He specifically denied saying anything to the police about it stating that, "I had already been informed that anything that I said would be used against me, so I told them my name and my address up until today."

Officer Doug Maple was called to the stand to impeach this testimony of the defendant. Outside the presence of the jury, the trial court conducted a Jackson-Denno hearing (Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964)) to determine the voluntariness of a statement made by defendant at a preindictment line-up. Officer Maple testified that the day before the line-up he had read the defendant his Miranda rights and that the defendant had indicated that he understood his rights. As stated above, the defendant re-affirmed at trial that he had understood his rights. Officer Maple testified that while conducting the line-up he made a statement to the defendant "almost as an afterthought." He had said, "By the way, Howard, you went to all the trouble to change your clothes, but you forgot to change your underclothes. I found blood stains on your underclothes." The defendant then responded, "I

knew that was there. I cut myself shaving." The trial court held that defendant's statement was voluntary and not given in response to any question submitted to him.

First, defendant was not entitled to counsel at this line-up which was held not only prior to indictment but prior to the initiation of any adversary judicial criminal proceedings. See Kirby v. Illinois, 406 U. S. 682 (92 SC 1877, 3 LE2d 411) (1972); Moore v. Illinois, 434 U. S. 220 (98 SC 458, 54 LE2d 424) (1977). Next, we need not consider whether or not Miranda warnings given the day before were sufficient to apprise defendant of his constitutional rights on the day in which he made his statement. The statement was introduced solely for the purpose of impeachment. Under Harris v. New York, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971), and its progeny, the statement was admissible for impeachment purposes despite the failure to give Miranda warnings. The statement simply had to be found to have been voluntarily made. This the trial court found.[3] We must accept this factual determination unless that finding is shown to be clearly erroneous. *Pierce v. State,* 235 Ga. 237 (219 SE2d 158) (1975). As the statement seemed to be a purely spontaneous remark in response to the police officer's statement, the trial court's finding cannot be said to be clearly erroneous.

When a statement is properly admitted for impeachment purposes alone, the burden is on the trial court to caution the jury that the evidence is to be considered only for the purpose of assessing the defendant's credibility and not to establish his guilt of the offense for which he is on trial. *Scott v. State,* supra. Failure to so instruct the jury could be error. Id. See *Campbell v. State,* 231 Ga. 69 (200 SE2d 690) (1973). In

---

[3]We held in *Scott v. State,* 243 Ga. 233 (253 SE2d 698) (1979), that a separate hearing on voluntariness was not required when the statement was being introduced for impeachment. However, this did not change the requirement that the statement had to be voluntarily made to be admissible. See Mincey v. Arizona, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978).

the case at bar the trial court did not give limiting instructions to the jury. However, here as in *Scott,* we hold that any possible error did not harm the defendant. The statement made by defendant was not inculpatory in nature and could not serve to establish his guilt in any manner. The only purpose it *could* serve was for impeachment.

7. In his seventh enumeration of error, the defendant contends that a mistrial should have been granted because of prejudicial remarks made in the prosecutor's closing argument.

The prosecutor made no remarks which could be construed as urging his personal belief as to the credibility of the witness, Vicky Hink. Furthermore, this was not the objection which defense counsel voiced at trial. See *House v. State,* 227 Ga. 257(1) (181 SE2d 31) (1971). The prosecutor's remark about towels coming in matched sets was corrected by the prosecutor himself after defense counsel objected and no further request for corrective action was made. The only time a motion for mistrial was made was when the prosecutor made an ambiguous remark about James Ameen's testimony being the same as his earlier statement. Defense counsel's objection was that there had been no testimony about a statement by James Ameen. This was clearly incorrect. See Division 2 of this opinion. Therefore, the trial court correctly overruled the motion for mistrial. See again *House v. State,* supra. The prosecutor's ambiguous remark was clarified, again by the prosecutor himself, when he stated that Mr. Ameen *testified* that his earlier statement was the same as his testimony at trial. The trial court's corrections of the prosecutor's statements were appropriate and consistent with defense counsel's objections. See *Chandler v. State,* 143 Ga. App. 608(2) (239 SE2d 158) (1977). No objection was made at trial to the prosecutor's statement which defendant now urges vouched for the credibility of James Ameen, nor is it now alleged that such failure constituted ineffective assistance of counsel (see Division 12 of this opinion). Such failure to object constitutes waiver. *Edwards v. State,* 224 Ga. 684 (164 SE2d 120) (1968); *Moore v. State,* 222 Ga. 748, 749(6) (152 SE2d 570) (1966). In any event,

such a general remark by the prosecutor could be regarded as a reasonable deduction from the evidence absent anything to the contrary. See *Floyd v. State,* 143 Ga. 286, 287(5) (84 SE 971) (1915).[4]

We find no merit in defendant's seventh enumeration of error.

8. In his eighth enumeration of error, defendant contends that the trial court erred in allowing witnesses to identify the defendant based on an impermissibly suggestive photographic line-up. He contends that the photographic line-up was impermissibly suggestive in that it was conducted *after* a physical line-up and the defendant's picture was the only one which reflected someone in the line-up. Defendant asserts that the witnesses picked out the individual they had seen in the physical line-up.

Defendant's allegation that the line-up took place before the photographic display is unsupported by the record. In fact, what evidence there is on the matter is to the contrary. One witness testified that she viewed the photographic display on the day of the robbery. The line-up was held at least a day later.

Defendant's eighth enumeration of error is without merit.

9. In his ninth enumeration of error, the defendant contends that the trial court erred in allowing the jury to consider armed robbery as a capital offense and thus an aggravating circumstance for the purpose of imposing a death sentence. A jury is authorized to impose the death penalty if they find that "the offense of murder . . . was committed while the offender was engaged in the commission of another capital felony . . ." Code Ann. § 27-2534.1 (b) (2). Even though the death penalty may no

---

[4]The statement by the prosecutor was: "The man testified and he told the truth." This was a logical deduction from the evidence since the witness' testimony had been corroborated by the testimony of other witnesses and by the physical evidence. See *Manning v. State,* 123 Ga. App. 844(6) (182 SE2d 690) (1971). See also *Ruffin v. State,* supra, at pp. 102-103.

longer be imposed for armed robbery alone (see *Collins v. State*, 239 Ga. 400 (236 SE2d 759) (1977)), armed robbery is still a capital felony under the aggravating circumstance provisions of the Code. *Peek v. State*, 239 Ga. 422 (238 SE2d 12) (1977); *Bowden v. State*, 239 Ga. 821, supra.

Defendant's contention that the trial court allowed the jury to consider armed robbery as a capital felony itself and not merely as an aggravating circumstance is unfounded.

10. In his tenth enumeration of error, defendant contends that the trial court placed undue emphasis on the death penalty while instructing the jury. We do not agree.

During the penalty phase of the trial, the trial court instructed the jury that if they were going to recommend a life sentence for the defendant they would simply leave the verdict as it then read — "We, the Jury, find the Defendant guilty." On the other hand, if they were going to recommend a death sentence, they had to go further and write, "We recommend death and find the following statutory aggravating circumstances beyond a reasonable doubt," and then write the aggravating circumstance or circumstances they had found to exist. Written copy of the three possible aggravating circumstances was enumerated and sent out with the jury. After deliberating on the sentence for a period of time, the jury returned to the courtroom and reported that they were having trouble with the *wording* of the verdict. The foreman stated, "We are in agreement on one and two if we can get it in writing." The trial court then instructed them on the wording for a death sentence, the only sentence which needed "words." It is apparent that at the time of re-instruction, the jury had already reached a verdict of death and that the trial court correctly instructed them on the proper wording of the verdict.

The defendant's tenth enumeration of error is without merit.

11. In his eleventh enumeration of error, defendant argues that the trial court erred in charging the jury on conspiracy when it was not alleged in the indictment. Clearly the evidence in this case indicated a conspiracy to

rob this Seven-Eleven store. "When the evidence tends to show a conspiracy, a charge upon the subject is not error even if not alleged in the indictment." *Montgomery v. State,* 128 Ga. App. 116, 117 (195 SE2d 784) (1973). See also *Lerch v. State,* 234 Ga. 857 (218 SE2d 571) (1975); *Farley v. State,* 145 Ga. App. 98, 103 (243 SE2d 322) (1978).

Defendant's eleventh enumeration of error is without merit.

12. In his twelfth enumeration of error, defendant argues that he was denied effective assistance of counsel such as to deny him a fair trial. He enumerates some twenty acts or omissions which he contends illustrate ineffective assistance of counsel. We have carefully reviewed the record in this regard and disagree that the alleged acts or omissions constitute ineffective assistance of counsel.

As we have held repeatedly, the right to counsel is the right to effective counsel. " 'We interpret counsel to mean not errorless counsel, and *not counsel judged ineffective by hindsight,* but counsel reasonably likely to render *and rendering* reasonably effective assistance.' " *Pitts v. Glass,* 231 Ga. 638, 639 (203 SE2d 515) (1974) quoting from MacKenna v. Ellis, 280 F2d 592, 599 (5th Cir. 1960). (Emphasis in *Pitts*). What we said in *Estes v. Perkins,* 225 Ga. 268 (167 SE2d 588) (1969) still applies: "While another lawyer or lawyers, had they represented the petitioner upon her trial, might have conducted her defense in a different manner, and might have exercised different judgments with respect to the matters referred to in her petition, the fact that her attorneys chose to try the petitioner's case in the manner in which it was tried and made certain decisions as to the conduct of her defense with which she and her presently employed attorneys now disagree, does not require a finding that their representation of the petitioner was so inadequate as to amount to a denial to her of the effective assistance of counsel."

The acts or omissions of counsel, listed by defendant, are matters of strategy and trial tactics which he cannot now question. Trial counsel at the hearing on motion for new trial testified that he was a member in good standing

of the State Bar of Georgia having been admitted in 1949. During the course of his career he had tried approximately 2,000 criminal cases including twelve capital felonies out of which only one other client received the death penalty. In preparation for defendant's trial, counsel attended the trial of a co-defendant and took notes, interviewed defendant numerous times and with the help of his investigator familiarized himself with the witnesses and their testimony and filed certain pre-trial motions. At trial, counsel asked questions on voir dire, struck certain jurors from the panel, vigorously and extensively cross examined key prosecution witnesses, objected to statements made by the prosecution, presented defendant's sole defense, and presented a closing argument in which he attacked the credibility and reliability of the testimony of prosecution witnesses.

Defendant's twelfth enumeration of error is without merit.

13. In his fifteenth enumeration of error, defendant argues that the imposition of the death penalty, particularly by electrocution, is cruel and unusual punishment. These arguments have been decided adversely to defendant by the United States Supreme Court in Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976) and by this court repeatedly. Coley v. State, 231 Ga. 829 (204 SE2d 612) (1974); McCorquodale v. State, 233 Ga. 369 (211 SE2d 577) (1974); Young v. State, 237 Ga. 852 (230 SE2d 287) (1976); Collins v. State, 243 Ga. 291 (253 SE2d 729) (1979).

14. In his sixteenth enumeration of error, defendant contends that the systematic exclusion of blacks from the jury denied him trial by an impartial jury. This point, raised for the first time after verdict, presents nothing for review. In any event, we have held that removal by peremptory strikes of all black jurors from the jury panel in a particular case does not deny due process. Jordan v. State, supra.

There is no merit in defendant's sixteenth enumeration of error.

15. Sentence Review.

(a) We find that the sentence of death in this case was not imposed under the influence of passion, prejudice,

832

or other arbitrary factor. Code Ann. § 27-2537 (c) (1).

(b) The jury's finding that "the offense of murder was committed while the offender was engaged in the commission of another capital felony, to-wit: armed robbery" (Code Ann. § 27-2534.1 (b) (2)) is supported by the evidence. The jury's finding that "the offender by his act of murder knowingly created a great risk of death to more than one person in a public place by means of a weapon or device which would normally be hazardous to the lives of more than one person" (Code Ann. § 27-2534.1 (b) (3)) is supported by the evidence. We conclude that a .32 caliber automatic, the murder weapon in this case, is a weapon which is normally hazardous to the lives of more than one person, when used in a public place.

(c) In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed for murder, and we find the cases listed in the appendix support affirmance of the death penalty. The defendant's death sentence is not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (3).

We have reviewed the instructions given by the trial judge during the sentencing phase and find that they are not subject to the defects dealt with in our decisions in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977) and *Hawes v. State,* 240 Ga. 327(9) (240 SE2d 833) (1977).

*Judgment affirmed. All the Justices concur, except Hall, J., who dissents as to Division 1.*

Argued April 10, 1979 — Decided June 20, 1979.

*Brooks S. Franklin,* for appellant.

*Arthur K. Bolton, Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General, M. Randall Peek, District Attorney, Alton G. Hartley, Assistant District Attorney,* for appellee.

APPENDIX.

*Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970);

*Callahan v. State,* 229 Ga. 737 (194 SE2d 431) (1972); *Kramer v. State,* 230 Ga. 855 (199 SE2d 805) (1973); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Campbell v. State,* 240 Ga. 352 (240 SE2d 828) (1977); *Spivey v. State,* 241 Ga. 477 (246 SE2d 288) (1978); *Ruffin v. State,* 243 Ga. 95 (252 SE2d 472) (1979); *Willis v. State,* 243 Ga. 185 (253 SE2d 70) (1979).