## A11A1434. VEASEY v. THE STATE.
(717 SE2d 284)

DILLARD, Judge.

Following a trial by jury, James Veasey was convicted of one count of robbery, two counts of fleeing and attempting to elude police, and various traffic offenses. Veasey challenges these convictions on appeal, arguing that the evidence against him was insufficient, that the trial court erred in denying a *Batson* challenge during voir dire, and that his trial counsel was ineffective. For the reasons noted infra, we affirm Veasey's convictions.

Viewed in the light most favorable to the verdict,[1] the record shows that the victim, a 67-year-old woman, was grocery shopping late one afternoon when she noticed Veasey following her down various aisles. Although she was uncomfortable with Veasey's behav-

---

[1] *See, e.g., Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

ior, the victim ignored her intuition and continued shopping, eventually checking out and heading to the parking lot. As she began to load the groceries into her vehicle, the victim noticed a white car pull up alongside her, and she recognized the driver as the man who had followed her inside the store.

After greeting the man and asking if she could help him, Veasey exited the vehicle and came toward the victim. At this point, the victim realized she was about to be robbed, and a struggle then ensued over the victim's purse until the straps broke and the victim fell hard to the ground.[2] As Veasey returned to his car and fled, the victim repeated the numbers on the vehicle's temporary tag and gave the information to a bystander who had stopped to offer assistance. The bystander then called 911 and relayed a description of the assailant as being a heavyset African American man wearing jeans, a blue shirt, and a cap; the vehicle's tag number; and a description of the getaway car as a white, later-model Ford Crown Victoria.

A Thomasville police officer was dispatched to the grocery store's parking lot and, while questioning the victim and witnesses, heard over the radio that another officer had spotted a vehicle matching the relayed description in the parking lot of a nearby store. Additionally, five of the six tag numbers supplied by the victim matched those on the vehicle, and a man who met the description of the suspect was observed entering the driver's side of same.

As the other officer attempted to conduct a stop, the vehicle sped off, running a red light in the process. A high-speed chase then ensued, with the fleeing vehicle exceeding 100 miles per hour, running multiple red lights, swerving into the opposite lane of traffic, and nearly colliding with other cars.

Veasey's vehicle eventually crossed into Florida, where he attempted to turn into the parking lot of yet another grocery store while traveling at 80 to 100 miles per hour. This speed proved to be more than the vehicle could bear, and it careened past oncoming traffic and into a guard rail, at which point the car spun 360 degrees and Veasey was forcibly ejected. But to the astonishment of law enforcement, Veasey immediately jumped up and fled from the scene. Nevertheless, after a brief foot chase, Veasey was captured and sent to a hospital for treatment and, eventually, jail.

Upon his arrest, Veasey was searched, and the victim's checkbook, driver's license, debit card, and military identification card were found on his person. The victim's purse was recovered from inside Veasey's vehicle, and the purse contained a number of items belonging to the victim, including the victim's cell phone; various

---

[2] The victim sustained bruises to her arms, legs, knees, and hands.

appointment, membership, and identification cards; the victim's asthma inhaler and other prescription medication; and a photograph of her son. The trunk of the car also contained two television sets that were purchased in the brief period of time between the robbery and the high-speed chase by a person matching Veasey's description, using one of the victim's checks.

Veasey was ultimately indicted for theft by taking, robbery, two counts of fleeing and attempting to elude law enforcement, driving on the wrong side of the road, four counts of disregarding traffic-control devices, two counts of reckless driving, and driving with a suspended license. The State nolle prossed the counts of theft by taking and driving with a suspended license, but Veasey was convicted by a jury on all other counts. Veasey filed motions for a directed verdict and new trial, both of which the trial court denied. This appeal follows.

1. Veasey challenges the sufficiency of the evidence, essentially arguing that any identification of him as being the robbery suspect was insufficient. We disagree.

At the outset, we note that after a defendant has been convicted, "we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence."[3] And we "do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[4] So viewed, we conclude that the State met its burden of proof.

The evidence was sufficient to convict Veasey of the charged offenses when the victim and officers identified him in court as the robbery suspect and the driver in the high-speed chase; he drove a vehicle that matched the description of that driven by the victim's assailant; he was found in possession of the items stolen from the victim; and he was found in possession of television sets purchased with a check stolen from the victim.[5] Accordingly, this enumeration

---

[3] *Powell*, 310 Ga. App. at 144.

[4] *Id.*

[5] *See, e.g., Robins v. State*, 298 Ga. App. 70, 72 (1) (679 SE2d 92) (2009) (robbery victims' in-court identification of suspect was sufficient evidence to sustain conviction); *Walker v. State*, 281 Ga. App. 94, 94-100 (635 SE2d 577) (2006) (evidence was sufficient to convict defendant of various theft-related offenses when he was found in possession of stolen items); *Davis v. State*, 275 Ga. App. 714, 716 (1) (621 SE2d 818) (2005) (sufficient evidence to convict defendant of burglary when he was found in possession of stolen items within hours of burglary); *Jenkins v. State*, 259 Ga. App. 47, 50 (2) (576 SE2d 300) (2002) (sufficient evidence to convict defendant of burglary when, *inter alia*, he was found in possession of items identified by the victim as having been stolen); *Buckner v. State*, 253 Ga. App. 294, 294-95 (1) (558 SE2d 823) (2002) (evidence was sufficient to sustain convictions for burglary and fleeing to elude police when defendant was identified in court by officer and was found in possession of stolen items); *see*

of error is wholly without merit.

2. Veasey also argues that the trial court erred in denying his *Batson*[6] challenge during voir dire, contending that the State failed to create a sufficient record to overcome his challenge. Again, we disagree.

During jury selection, when an opponent of a peremptory strike demonstrates a prima facie case of racial discrimination, the proponent must articulate a racially neutral explanation for the strike.[7] A "neutral explanation" is one that is "based on something other than the race of the juror," and unless a discriminatory intent is inherent in the explanation, the reason that is offered will be deemed race-neutral.[8] Additionally, "the findings of the trial court are entitled to great deference[ ] and should not be disturbed unless clearly erroneous."[9]

And here, the record shows that Veasey made a *Batson* challenge after the State struck seven African American jurors from the panel. The trial court requested a race-neutral explanation, and the State explained that it had conducted a jury meeting with several members of law enforcement who identified potential jurors with previous run-ins or negative experiences/contacts with law enforcement.

Specifically, the State offered the following explanations for striking the jurors: (1) two were mothers of convicted criminals with negative experiences with law enforcement; (2) one had a prior assault charge and negative contacts with law enforcement; (3) one was the sister of a convicted felon; (4) one had a prior arrest; and (5) one lived at an address where law enforcement frequently responded. As to the seventh juror, the State explained that he was a preacher and that, based on prior experience, preachers are oftentimes too forgiving as jurors. Additionally, this final juror was struck for strategic purposes because the prosecution deemed the replacement juror, also an African American, to be fair and impartial. The

---

*also* OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

   [6] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

   [7] *Cooper v. State*, 220 Ga. App. 531, 532 (469 SE2d 790) (1996); *see also Purkett v. Elem*, 514 U. S. 765, 767 (115 SC 1769, 131 LE2d 834) (1995) (per curiam) ("[O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination . . . , the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation . . . . If a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." (citations omitted)).

   [8] *Cooper*, 220 Ga. App. at 532 (citation and punctuation omitted); *see also Purkett*, 514 U. S. at 767-68 ("The second step of this process does not demand an explanation that is persuasive, or even plausible.").

   [9] *Gilbert v. State*, 226 Ga. App. 230, 232 (486 SE2d 48) (1997) (citation and punctuation omitted).

trial court accepted all of the foregoing explanations as race-neutral.

On appeal, Veasey takes issue with the State obtaining its information regarding potential jurors' negative experiences with law enforcement through an unrecorded investigatory meeting. However, we have previously upheld denials of *Batson* challenges when the stated reasons were based on information gathered through off-the-record discussions with law enforcement.[10] Accordingly, we conclude that the State presented an acceptable race-neutral explanation for exercising its strikes.[11]

3. Finally, Veasey argues that his trial counsel was ineffective in a number of ways, namely in (a) failing to object to hearsay testimony, (b) failing to file a motion challenging the victim's in-court identification of Veasey, and (c) failing to object to testimony that was "without foundation."

In order to prevail on his claims of ineffective assistance of counsel, Veasey "must show that counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[12] In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[13] And unless clearly

---

[10] *See, e.g., Alford v. State*, 224 Ga. App. 451, 457-58 (6) (480 SE2d 893) (1997) (juror struck when law-enforcement officer informed State about prior negative contact); *Herrin v. State*, 221 Ga. App. 356, 358 (471 SE2d 297) (1996) (State made inquiries about potential jurors with law enforcement and struck based on negative experiences); *Mathis v. State*, 204 Ga. App. 244, 245 (3) (418 SE2d 800) (1992) (police informed State that potential juror had connections to illegal drug business).

[11] *See supra* note 7; *see also Jackson v. State*, 220 Ga. App. 98, 99 (469 SE2d 264) (1996) (race-neutral explanation when State struck juror out of fear that she would be "too forgiving" based on a failure to press charges when her home was burglarized). *Compare Congdon v. State*, 262 Ga. 683, 683-84 (424 SE2d 630) (1993) (improper for State to strike jurors for the simple reason that they were African American citizens of a town who were generally believed to harbor ill will toward the sheriff, who was the principal witness in the case); *Parker v. State*, 219 Ga. App. 361, 364 (1) (464 SE2d 910) (1995) (improper for State to strike jurors "based almost entirely on their demeanor" because this was not the "kind of concrete, tangible, race-neutral, case-related and neutrally applied reasons sufficient to overcome" a challenge). We note that although the record contains a transcript of the *Batson* challenge, there is no record of the initial jury interviews and selection. And when the transcript or record "does not fully disclose what transpired at trial, the burden is on the complaining party to have the record completed in the trial court under the provisions of OCGA § 5-6-41." *Acey v. State*, 281 Ga. App. 197, 201 (3) (635 SE2d 814) (2006) (citation and punctuation omitted). Thus, "we are hampered in our efforts to fully analyze this issue because voir dire was not transcribed." *Id.* at 202 (3) (citation and punctuation omitted). However, based on our review of the arguments made by Veasey, "we find no clear error in the trial judge's conclusions that these strikes were [not] exercised in a racially discriminatory manner." *Id.* (citation and punctuation omitted).

[12] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see also Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[13] *Chapman*, 273 Ga. at 350 (2).

erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel.[14] A trial court's legal conclusions in this regard, however, are reviewed de novo.[15] With these principles in mind, we will address each of Veasey's claims in turn.

(a) *Hearsay Testimony.* Veasey contends that his trial counsel failed to object to instances of inadmissible hearsay testimony. We disagree.

The first alleged instance occurred when the officer who responded to the initial crime scene testified that he heard over his radio that another officer had spotted Veasey in a nearby parking lot. The second alleged instance occurred when an officer who pursued Veasey testified as to the information he received from another officer regarding the year and vehicle identification number of the car. And the third alleged instance occurred when a witness to the crime testified as to the information the victim asked him to relay to police when the witness called 911.

In each of the above instances, the individual who made the out-of-court declaration testified at trial and was subject to cross-examination. And

> [i]f a hearsay declarant is present at trial and subject to unrestricted cross-examination, a defendant's right to cross-examination is satisfied, and the witnesses' prior out-of-court statements are not hearsay under OCGA § 24-3-1 because the declarant is available for cross-examination, and the evidence does not rest upon the credibility of other persons.[16]

Accordingly, any objection to the above-referenced testimony would have been futile, and "[t]he failure to pursue a futile objection does not amount to ineffective assistance."[17]

(b) *Victim's Identification of Veasey.* Veasey next contends that his trial counsel was ineffective in failing to file a motion challenging the victim's in-court identification of him as the person who robbed her.

Veasey argues that a motion to suppress the victim's in-court identification should have been filed because there was no lineup conducted, the victim was told that the perpetrator had been caught,

---

[14] *Id.*; *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

[15] *Henderson*, 303 Ga. App. at 898 (1).

[16] *Overton v. State*, 295 Ga. App. 223, 237 (5) (671 SE2d 507) (2008) (citation and punctuation omitted).

[17] *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008) (citation omitted).

the descriptions of the suspect were inadequate, and the victim wore glasses but was not cross-examined on this fact. But trial counsel testified at the motion for new trial hearing that he did not file a motion to suppress because there was no basis on which to make a valid motion. We agree with trial counsel.

While it is true that "[i]t is error to allow testimony concerning a pre-trial identification of a defendant if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification,"[18] in the case sub judice there was no pre-trial identification procedure. Indeed, the victim's only identification of Veasey as the perpetrator occurred in court. Moreover, the victim's identification of Veasey was supported by the fact that she had multiple opportunities to observe Veasey (i.e., as he followed her through the grocery store and later when he confronted her face-to-face in the parking lot) and that he was found in possession of a number of stolen items that belonged to her. Accordingly, any motion would have been without merit, and the "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance."[19]

(c) *Testimony "Without Foundation."* Veasey's final contention is that his trial counsel was ineffective in failing to object to officer testimony that Veasey drove "in a reckless manner in reckless disregard for the safety of persons and property on the highway." Specifically, he argues that this testimony was "without foundation," which we presume is actually an argument that this testimony reached an ultimate issue for the jury's consideration. Nevertheless, this enumeration is without merit.

The officer in question testified that Veasey was clocked as traveling at 127 miles per hour and topped out at 133 miles per hour in a 65-mile-per-hour zone; that he weaved recklessly through traffic; drove into oncoming traffic; and eventually spun out and crashed while attempting a turn at 80 to 100 miles per hour. The jury also viewed a video taken from the officer's patrol car during the chase. And while the officer did testify at one point that "[Veasey] was going in and out of traffic in a reckless manner, [in] complete disregard for the safety of other motorists on the way he was cutting people off," this testimony is of no consequence given the other detailed testimony regarding the driving infractions and the overwhelming evidence of Veasey's guilt. In sum, Veasey has not shown

---

[18] *Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999).

[19] *Moore v. State,* 278 Ga. 397, 401 (2) (e) (603 SE2d 228) (2004) (citation and punctuation omitted).

that a failure to object rendered his counsel ineffective.[20]

Accordingly, for all the foregoing reasons, we affirm Veasey's convictions.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 21, 2011.

*Brandon Lewis*, for appellant.

*J. David Miller, District Attorney, Robert R. Auman, Assistant District Attorney*, for appellee.

---

[20] *See Chapman*, 273 Ga. at 349-50 (2) ("[A] criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."). *Cf. Mitchell v. State*, 255 Ga. App. 585, 590 (5) (565 SE2d 889) (2002) (suggesting that witness's testimony that defendant operated a boat with "reckless disregard for safety" would have been harmless error in light of the overwhelming evidence of guilt). We also note that "[d]ecisions regarding when and how to raise objections are generally matters of trial strategy. . . ." *Nesbitt v. State*, 296 Ga. App. 139, 142 (3) (d) (673 SE2d 652) (2009).