**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 4, 2018**

# In the Court of Appeals of Georgia

A18A1178. CURRY v. THE STATE.

MERCIER, Judge.

Following a jury trial, Terrell Curry was convicted of armed robbery, aggravated assault, and criminal trespass. He appeals, claiming that the trial court failed to give a necessary limiting instruction to the jury and erred in excluding certain evidence. He also argues that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdicts, see *Woodall v. State*, 294 Ga. 624 (754 SE2d 335) (2014), the evidence shows that 16-year-old Q. K. was robbed at gunpoint while walking home from his school bus stop on May 13, 2013. As Q. K. left the bus stop, he noticed two men walking in front of him, one of whom was wearing camouflage cargo pants and a red shirt that said "ball game" on the back.

The man in the red shirt "kept looking back" at him, which Q. K. found suspicious. Someone touched Q. K. from behind, and he turned to find two more men. At that point, the four men surrounded Q. K., one man demanded his possessions, and the man in the red shirt pointed a gun at him. Q. K. gave the men his cell phone and wallet, and the four men fled on foot.

Q. K. reported the incident to the police, providing a description of the men, including the clothing worn by the gunman. While on patrol later that evening, a police officer saw a group of young males playing basketball less than one-half mile from the robbery scene. The group included Curry, who met the physical description of the gunman and was wearing camouflage cargo pants and a red shirt with "ball game" on the back. The officer detained Curry and found Q. K.'s cell phone in his pocket. The memory card from the cell phone, however, was missing. At trial, Q. K. identified Curry as the gunman, noting that he was "100 percent" certain in his identification.

Curry testified in his own defense at trial. He admitted that he was with the individuals who robbed Q. K. and that he was the only person present wearing a red shirt with "ball game" on the back. He also removed the memory card from the cell phone police seized from his pocket. Nevertheless, he asserted that he was not involved in the crimes and did not know the group planned to rob anyone. The jury,

2

however, found him guilty of armed robbery, aggravated assault, and criminal trespass (by interfering with Q. K.'s cell phone).

1. Curry first claims that the trial court erred in failing to give a limiting instruction to the jury regarding his written custodial statement. The record shows that Curry gave both an oral and written statement to police. And without dispute, he was not advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LED2d 694) (1966), before giving these statements. The trial court thus prohibited the State from mentioning the statements at trial "unless and until the defendant opens the door with respect to any statements or for impeachment purposes."

Through his trial testimony, Curry indicated that he thought the cell phone seized from his pocket belonged to one of the other basketball players, who purportedly asked Curry to hold it during the game. The State subsequently used Curry's written statement to impeach this testimony, establishing that he had previously admitted to police that he knew when he took possession of the phone that it belonged to the robbery victim. Curry now argues that the trial court should have informed the jury that it could only consider the written statement for impeachment purposes.

A custodial statement taken in violation of *Miranda* may, under appropriate circumstances, be admitted to impeach the credibility of the defendant. See *Harris v.*

3

*New York*, 401 U. S. 222, 226 (91 SCt 643, 28 LE2d 1) (1971); *Babbitt v. State*, 337 Ga. App. 553, 554 (1) (a) (789 SE2d 205) (2016). When a statement is admitted for impeachment, however, "the burden is on the trial court to caution the jury that the evidence is to be considered only for the purpose of assessing the defendant's credibility and not to establish his guilt of the offense for which he is on trial." *Jones v. State*, 243 Ga. 820, 826 (6) (256 SE2d 907) (1979) (citations omitted).[1] See also *Eldridge v. State*, 270 Ga. App. 84, 86 (2) (606 SE2d 95) (2004) ("[A] prior inconsistent statement is admissible for impeachment purposes even if *Miranda* warnings were not given, although the trial court in this circumstance has a duty to give appropriate limiting instructions.") (citation omitted). Failure to give such an instruction "could be error." *Jones*, supra (citations omitted).

It does not appear that the trial court gave a limiting instruction when admitting Curry's statement. But even if the trial court erred in this regard, reversal only results if the error was harmful. See *Jones*, supra at 826-827 (6); *Scott v. State*, 243 Ga. 233 (1) (253 SE2d 698) (1979). And no harm resulted here. After the State cross-examined

---

[1] Curry was tried in 2014, after the New Evidence Code took effect in 2013. See Ga. L. 2011, p. 99, § 101. Although *Jones* was decided under the prior evidence rules, we find no reason to disregard its discussion of limiting instructions.

Curry, he elected to play for the jury a recording of his oral custodial statement to police. In that statement – as in the written statement – Curry admitted that he was present during the armed robbery and knew the phone in his pocket belonged to the person robbed. In light of Curry's decision to present his oral statement to the jury, as well as the significant evidence linking him to the crimes, "we cannot say [Curry] was harmed by the trial court's failure to give precautionary instructions to the jury regarding the purpose for which the [impeachment] evidence was introduced." *Scott*, supra (citations omitted).

2. Curry argues that the trial court erred in refusing to admit evidence that, on the day before Q. K. was robbed, another person dressed in red clothing reportedly committed an armed robbery in the same neighborhood. According to Curry, this evidence was admissible to show that someone other than him possibly robbed Q. K. We disagree.

Generally, a criminal defendant may present relevant and admissible evidence that another individual committed the crimes charged. See *Woodall*, supra at 632 (8). The proffered evidence, however, "must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or

5

similar nature." Id. at 632-633 (8) (citation omitted). Evidence that simply "casts a bare suspicion on another or raises a conjectural inference as to the commission of the crime by another is not admissible." *Watson v. State*, 278 Ga. 763, 771 (10) (604 SE2d 804) (2004) (citation omitted). A trial court exercises its discretion in reviewing the admissibility of such evidence, and we will not reverse absent an abuse of that discretion. See *Woodall*, supra at 632 (8).

Curry's proffered evidence raises no more than a "bare suspicion" that someone else committed the crimes here. When questioned outside of the jury's presence about the prior incident, the investigating officer testified that police could not confirm that the other robbery had actually occurred, and he noted that the individual detained in connection with the alleged prior crime had been released. Moreover, Curry admitted that he was present during the armed robbery in this case and was the only person at the robbery scene wearing a red shirt with "ball game" written on it. Q. K. also testified, without equivocation, that Curry pointed a gun at him during the robbery.

Given the significant evidence establishing Curry's involvement in the crimes against Q. K., an unconfirmed and speculative *possibility* that someone else wearing red may have committed a different robbery in the neighborhood on another day

"does not raise an inference that [Curry] is innocent of" the crimes charged. *Jones v. State*, 320 Ga. App. 681, 687 (3) (740 SE2d 655) (2013). The trial court, therefore, properly excluded the evidence. See *Jones*, supra; *Woodall*, supra at 633 (8) ("The trial court . . . was not required to allow appellant to introduce evidence that was based purely on rumor, speculation, and conjecture."); *Watson*, supra (trial court properly exercised its discretion in excluding evidence that "was too threadbare to be admissible").

3. Finally, Curry asserts that he received ineffective assistance of counsel at trial because defense counsel failed to object to or move to suppress the victim's in-court identification testimony. To prevail on this claim, Curry must show that counsel's performance was deficient and that the deficiency "so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." *Veasey v. State*, 311 Ga. App. 762, 766 (3) (717 SE2d 284) (2011) (footnote and punctuation omitted), disapproved of in part on other grounds by *Toomer v. State*, 292 Ga. 49, 54 (2) (734 SE2d 333) (2012).

Q. K. testified that at some point during the robbery investigation, an officer informed him that an arrest had been made, stating, "I got him." Citing this testimony, Curry argues that the officer's "I got him" statement impermissibly tainted the victim's

7

identification, subjecting it to exclusion under *Neil v. Biggers*, 409 U. S. 188 (93 SCt 375, 34 LE2d 401) (1972). Q. K., however, was never asked to identify Curry through a line-up, photographic array, or other pre-trial procedure. The in-court testimony was the only identification at issue.

As explained by the Georgia Supreme Court, *Neil v. Biggers*, which addresses out-of-court identification evidence, "is irrelevant to the admissibility of in-court identifications." *Hunt v. State*, 279 Ga. 3, 4 (2) (608 SE2d 616) (2005) (footnote omitted). Challenges to in-court identifications generally must be made "through cross-examination." Id. (footnote omitted). In this case, the record shows that defense counsel challenged Q. K.'s in-court identification on cross-examination, raising questions about his level of attention and ability to see each of the four robbers during the brief, chaotic incident. Curry has not demonstrated – or claimed – that counsel's cross-examination was deficient. And other than his misplaced reliance on *Neil v. Biggers*, he has offered no viable basis for objecting to the admissibility of the identification testimony. See *Veasey*, supra at 767-768 (3) (b) (victim's in-court identification not subject to objection, even though "victim was told that the perpetrator had been caught"). Under these circumstances, any effort by trial counsel to exclude the testimony "would have been without merit, and the failure to make a

8

meritless objection cannot be evidence of ineffective assistance." Id. at 768 (3) (b) (footnote and punctuation omitted).

*Judgment affirmed. Dillard, C. J., and Doyle, P. J., concur.*